UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------

STICHTING JURIDISCH EIGENDOM DE VESTE BELEGGINGSFONDSEN,

        Plaintiff,

  -against-

CAPSTONE CREDIT, LLC, CAPSTONE CAPITAL GROUP, LLC and JOSEPH F. INGRASSIA,

        Defendants.

Case No. 21-cv-2102-LGS

**AMENDED COUNTERCLAIMS AGAINST STICHTING JURIDISCH EIGENDOM DE VESTE BELEGGINGSFONDSEN AND AMENDED CLAIM AGAINST JACK VAN OOSTERBOSCH, AND DE VESTE B.V.**

------------------------------------------------------------------------

CAPSTONE CREDIT, LLC and CAPSTONE CAPITAL GROUP, LLC,

        Counterclaim-Plaintiffs,

  -against-

STICHTING JURIDISCH EIGENDOM DE VESTE BELEGGINGSFONDSEN, JACK VAN OOSTERBOSCH, AND DE VESTE B.V.,

        Counterclaim-Defendants.

------------------------------------------------------------------------

For their amended counterclaims against Plaintiff and their amended claim against Jack van Oosterbosch ("Oosterbosch") and DeVeste B.V. ("De Veste"), Capstone Credit, LLC and Capstone Capital Group, LLC (together the "Capstone Entities") allege as follows, utilizing the terms "Loan Documents," "Line of Credit Notes," "Loan and Security Agreements" and "Intercreditor Agreement" as defined by Plaintiff in the Complaint:

## NATURE OF THE ACTION

1.     This is an action for tortious interference, for fraudulent misrepresentation, and

for breach of the implied covenant of good faith and fair dealing. Defendants have been doing business with Oosterbosch and the predecessors in interest to De Veste and Plaintiff since 2009, when the fund then managed by Oosterbosch made investments as a limited partner in the Fund. Since then, the vehicles utilized by Oosterbosch and the predecessors in interest to De Veste and Plaintiff have changed over time as Oosterbosch experienced difficulties with regulators in the Netherlands. Defendants accommodated him, including by entering into the "Loan Documents" in 2017. Nevertheless, once the pandemic hit, and even understanding that promptly honoring redemption calls was as impossible for the Capstone Entities as it was for Plaintiff and De Veste, Plaintiff, Oosterbosch and De Veste made the demand and, taking advantage of the technical default, reached out to Defendants' customers to divert payments to Plaintiff. Furthermore, after Oosterbosch negotiated a modification of the loans, once Plaintiff, De Veste and Oosterbosch received the modification documents and the accompanying wire of $1 million, they retained the $1 million and did not execute the documents, but rather commenced this lawsuit. Throughout their relationship, until about the time the lawsuit was filed, Ingrassia personally updated Oosterbosch on the status of all transactions, in addition to the weekly reports provided by Defendants. Through their actions, Plaintiff, De Veste and Oosterbosch have damaged Defendants and their relationship with their customers, as well as the prospects of the business operated by the Defendants, Plaintiff, De Veste and Oosterbosch together.

## PARTIES

2. On information and belief, Plaintiff/Counterclaim-Defendant Stichting Juridisch Eigendom De Veste Beleggingsfondsen ("Plaintiff") is a foundation duly organized under the laws of the Netherlands, with a principal office at Hoogoorddreef 15, 1101 BA Amsterdam, The Netherlands. On information and belief, Plaintiff became and remains the legal owner of one

portion of the fund managed by De Veste and Oosterbosch that invested in Capstone Cayman Current Liquidity Fund, LP (the "Fund") in 2009, in order to respond to the concerns of regulatory authorities in The Netherlands.

3. On information and belief, De Veste was founded as De Veste Vermogensbeheer B.V. in 1999 and has its principal place of business at Liesboslaan 57a, 4813 EB Breda, The Netherlands.

4. On information and belief, Counterclaim-Defendant Oosterbosch is a natural person and a resident of The Netherlands and is the founder and CEO of Counterclaim-Defendant De Veste, the fund manager of Trade Finance Trade Fund (or Trade Finance Handelsfonds), of which Plaintiff identifies itself as "the independent legal owner" at paragraph 2 of its Complaint. Since 2009, Oosterbosch has been the principal, and often the only, means available to Defendants of communicating with Plaintiff, De Veste and their predecessors in interest. Oosterbosch signed the Loan and Security Agreement and the Intercreditor Agreement as "Read and agreed to." Oosterbosch visited Defendants' offices in New York City at least once a year and sometimes twice, and sent his investors to visit Defendants when his investors were in New York City.

5. Counterclaim-Plaintiff/Defendant Capstone Credit, LLC is a Delaware limited liability company with offices until August 2021 in New York, New York and currently with offices in Rochelle Park, New Jersey.

6. Counterclaim-Plaintiff/Defendant Capstone Capital Group, LLC is a Delaware limited liability company with offices until August 2021 in New York, New York and currently with offices in Rochelle Park, New Jersey.

## FACTUAL ALLEGATIONS

7. The Capstone Entities were established in 2009 and specialize in providing dependable financing for construction, manufacturing, publishing, temporary staffing, sales, advertising and public relations through factoring and purchase order financing.

8. Beginning in 2009, the funds operated by Plaintiff, De Veste and Oosterbosch made investments as a limited partner in the Fund, a Cayman Islands limited partnership of which the General Partner, Capstone Cayman Capital Asset Management, Ltd., is currently a party to the Intercreditor Agreement.

9. Since 2009, the parties have worked cooperatively to change the vehicles utilized by Oosterbosch, De Veste and Plaintiff to invest in the Fund. On information and belief, Plaintiff, De Veste and Oosterbosch requested these changes due to difficulties Oosterbosch, De Veste and Plaintiff experienced with the regulators in the Netherlands.

10. Most recently, the Capstone Entities accommodated Oosterbosch, De Veste and Plaintiff by executing the Loan and Security Agreements and Line of Credit Notes, as well as the Intercreditor Agreement.

11. Although the documents are referred to by Plaintiff as "Loan Documents," the spirit of the transaction was not for Plaintiff to extend a loan but instead to continue a relationship that began as a partnership. Upon information and belief, the investment was structured this way to allow Oosterbosch, De Veste and Plaintiff to address problems with their regulators in the Netherlands. Upon information and belief, Oosterbosch, De Veste and Plaintiff had violated the law by allowing retail investors to invest in a fund which was only available to institutional investors, i.e., investors with at least $100,000 to invest. Subsequent to the execution of the Loan Documents, Oosterbosch again suggested restructuring the arrangement, but this

restructuring never occurred. Each restructuring was difficult for the Capstone Entities, as steps had to be taken to preserve interests of all investors without impairing existing lines of credit, but the Capstone Entities accommodated the requests whenever feasible in light of the longstanding relationship between Defendants and Oosterbosch, Plaintiff and De Veste and their predecessors in interest.

12. Throughout the parties' relationship, the Capstone Entities have had weekly calls (usually on Thursdays) during which reports were made to Plaintiff, De Veste and Oosterbosch on the financial condition of the Capstone Entities, including their cash position and makeup of the Capstone Entities' portfolio. In addition, written reports known as the Tuesday reports were issued weekly and a data room of information was provided.

13. While the Loan Documents provided that Plaintiff could Call a pre-payment of the unpaid Obligations (as those terms are defined in the Loan Documents), and that the failure of the Capstone Entities to pay such an amount could constitute an Event of Default, the parties' working relationship and history makes clear that it was never intended to be used in the malicious and deceptive manner it was. It was not unusual for a redemption request to be made and almost immediately withdrawn, and requests were typically discussed before and after they were made.

14. In March and April 2020, Plaintiff demanded pre-payment of ten percent of the outstanding principal under the Loan Documents, despite being well aware that the Capstone Entities did not have the cash position to honor such a redemption. Indeed, in the weeks leading up to a redemption request, the parties had engaged in discussions about how much the Capstone Entities would be able to redeem based on their current cash position, which was adversely impacted by the global COVID-19 pandemic.

15. In June 2020, after the Capstone Entities were unable to honor the redemption, Plaintiff declared default and accelerated the balance due under the Loan Documents.

16. Upon information and belief, Plaintiff's actions were entirely designed to manufacture an Event of Default (as defined in the Loan Documents) in order to negotiate a new deal with the Capstone Entities and to get as much money upfront from them as possible to address problems Plaintiff, De Veste and Oosterbosch were once again having with their regulators, without regard to the impact on the Fund and its investors.

17. In the months following the alleged Event of Default, the parties continued business as usual, including holding weekly meetings to discuss the financial position of the Capstone Entities, providing and reviewing mid-term financials, and discussing alternative scenarios to resolve the redemption issue, such as refinancing the loans and seeking another investor to take over the loans. Defendants cooperated fully in yet another effort to assist Oosterbosch. For example, in November 2020, when Oosterbosch asked for Defendants' cooperation with The Development Group to perform a valuation of the portfolio, Defendants provided full cooperation, including a lunch meeting between Ingrassia and the Managing Partner of The Development Group in White Plains, New York, on November 18, 2021.

18. On December 3, 2020, Ingrassia and Oosterbosch discussed by telephone waiving the default and amending the Line of Credit notes to reflect interest payable through October 2020 and payments to reduce principal thereafter until paid in full, addressing any interest accrued during the windowed period once the final principal payment was made. On December 7, 2020, Oosterbosch and Ingrassia by email clarified the payments to be made and Ingrassia advised that Capstone in-house counsel had been asked to prepare the amendment. On January 15, 2021, Ingrassia confirmed to Oosterbosch that Capstone would present a modification to the

Loan and Security Agreements memorializing their verbal agreement that payments after the August and September interest payments would be applied to principal until the note was paid in full. Oosterbosch thereafter represented that after the Capstone Entities wired an initial payment, Plaintiff would execute a Modification of the Line of Credit Notes and a Modification of the Loan Security Agreements (the "Modification"), which the parties had fully agreed to. At no time prior to transmittal of the wire and the Modification did Oosterbosch reveal that he lacked authority to negotiate the Modification; rather, Defendants understood that Oosterbosch was negotiating on behalf of Plaintiff and De Veste and was keeping Plaintiff and De Veste apprised. Based on their long relationship with Oosterbosch, as well as with Plaintiff, De Veste and their predecessors in interest, Defendants had every reason to believe that the Modification was a valid and binding agreement.

19. The Modification as drafted provided that once the Capstone Entities made outstanding interest payments in the amount of $457,270.70 and $372,893.83, Plaintiff would waive the Event of Default, and any payments over the outstanding interest amount would be applied to the principal of the Notes. On Friday, February 26, 2021, relying on Oosterbosch's representations, the Capstone Entities wired $1,000,000 to Plaintiff and on Sunday, February 28, 2021, emailed the Modification to Oosterbosch, executed by the Capstone Entities, as agreed to by the parties. When emailing the Modification, Ingrassia included an updated account statement reflecting Friday's wire and simply asked that Oosterbosch have his administrator sign and return a copy for Defendants' files.

20. The next day Oosterbosch confirmed that the amounts in the account statement sent with the Modification were correct, asking only that the statement reflect "August and September" interest rather than "September and October" interest. However, even after this final

confirmation of their agreement, rather than execute the Modification, Plaintiff and Counterclaim Defendants retained the $1,000,000 payment and commenced this lawsuit.

21. Since commencing this lawsuit, Plaintiff has also reached out to certain of Defendants' customers, advising them of the alleged default and directing them to make payment directly to Plaintiff or its counsel rather than to the Capstone Entities. On information and belief, Plaintiff targeted some of Defendants' most important customers, making use of the information freely shared with Plaintiff, De Veste and Oosterbosch during their long relationship. The majority of these customers thereafter elected not to continue doing business with Defendants.

22. Since Plaintiff took the short-sighted step of filing this lawsuit, not a single subscription has been received into the Fund, to the detriment of all investors, including Plaintiff. Nevertheless, Defendants have continued to provide weekly reports and maintained the transparency they have established with Plaintiff and indeed with all their investors.

**AS AND FOR A FIRST CAUSE OF ACTION**
(Breach of Implied Covenant of Good Faith and Fair Dealing Against Plaintiff)

23. The Capstone Entities repeat and incorporate by reference the allegations contained in paragraph 1 through 22 above as if fully set forth herein.

24. The Capstone Entities are each a party to a Loan and Security Agreement and Line of Credit Note with Plaintiff.

25. Each of the foregoing contracts is governed by New York law.

26. Implicit in these contracts is the covenant of good faith and fair dealing in the course of contract performance, which requires that each promisor embrace the pledge that neither party shall do anything which will have the effect of destroying or injuring the right of another party to receive the fruits of the contract.

27. Plaintiff's manufacturing an Event of Default as described, as well as its refusal to sign the Modification after agreeing to it, are in violation of the implied covenant of good faith and fair dealing under New York law.

28. As a direct and proximate result of Plaintiff's breach of the implied covenant of good faith and fair dealing, the Capstone Entities have been damaged in an amount to be determined at trial.

## **AS AND FOR A SECOND CAUSE OF ACTION**
(Tortious Interference Against Plaintiff)

29. The Capstone Entities repeat and incorporate by reference the allegations contained in paragraph 1 through 28 above as if fully set forth herein.

30. The Capstone Entities have valid agreements with each of their customers which directed that payments be made to them.

31. Plaintiff was aware that the Capstone Entities had such agreements, and that payments were to be made to them.

32. On information and belief, Plaintiff selected Defendants' most important customers and reached out to them to advise them of the alleged default and demand that payment be made to Plaintiff or its counsel, thereby damaging Defendants' relationship with their customers.

33. As a direct and proximate result of Plaintiff's tortious interference, the Capstone Entities have been damaged in an amount to be determined at trial.

## **AS AND FOR A THIRD CAUSE OF ACTION**
(Fraudulent Misrepresentation Against Plaintiff, De Veste and Oosterbosch)

34. The Capstone Entities repeat and incorporate by reference the allegations contained in paragraph 1 through 33 above as if fully set forth herein.

35. Plaintiff, De Veste and Oosterbosch made fraudulent misrepresentations that

Plaintiff would waive the Event of Default and enter into the Modification, and that any payments over the outstanding interest amount would be applied to the principal of the Notes once Capstone Capital Group, LLC and Capstone Credit, LLC made outstanding interest payments in the amount of $457,270.70 and $372,893.83, respectively.

36. The Capstone Entities reasonably relied on these material misrepresentations, executed the Modification and wired Plaintiff an initial payment of $1,000,000.

37. Plaintiff did not waive the Event of Default, refused to execute the Modification, and instead filed this lawsuit.

38. As a direct and proximate result of the fraudulent misrepresentations of Plaintiff, De Veste and Oosterbosch, the Capstone Entities have been damaged in an amount to be determined at trial, but not less than $1,000,000.

WHEREFORE, Counterclaim-Plaintiffs Capstone Credit, LLC and Capstone Capital Group, LLC pray as follows:

A. That judgment be entered in favor of the Capstone Entities and against Plaintiff, De Veste and Oosterbosch on all Counterclaims/Claims;

B. That the Court award the Capstone Entities damages in an amount to be determined at trial, but no less than $10,000,000;

C. That the Capstone Entities be awarded reasonable attorneys' fees and costs; and

D. That the Capstone Entities be awarded such other and further relief as this Court deems just and proper.

Dated: New York, New York
November 19, 2021

**CROWELL & MORING LLP**

By: *s/Kathy H. Chin*
    Kathy H. Chin

590 Madison Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 223-4000
Facsimile: (212) 223-4134
khchin@crowell.com

*Attorneys for Defendants Capstone Credit, LLC, Capstone Capital Group, LLC and Joseph F. Ingrassia*