**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------

STICHTING JURIDISCH EIGENDOM DE VESTE
BELEGGINGSFONDSEN,

                Plaintiff,

     -against-

CAPSTONE CREDIT, LLC, CAPSTONE CAPITAL
GROUP, LLC and JOSEPH F. INGRASSIA,

                Defendants.
-------------------------------------------------------------------

CAPSTONE CREDIT, LLC and CAPSTONE
CAPITAL GROUP, LLC,

                Counterclaim-Plaintiffs,

     -against-

STICHTING JURIDISCH EIGENDOM DE VESTE
BELEGGINGSFONDSEN, JACK VAN
OOSTERBOSCH, AND DE VESTE B.V.,

                Counterclaim-Defendants.
-------------------------------------------------------------------

Case No. 21-cv-2102-LGS-SN


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO COUNTERCLAIM
DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM AND PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**


CROWELL & MORING LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
(212) 223-4000

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS ..................................................................................... 2

I.   The Parties Maintain a Business Relationship for More than a Decade. .............................. 2

II.  The Parties Enter into the Loan Documents in Response to Issues Raised by
     Regulators in the Netherlands. ......................................................................... 3

III. Plaintiff Declares Default and Refuses to Honor the Modification. ...................................... 4

ARGUMENT ......................................................................................................... 7

I.   THE COURT SHOULD NOT DISMISS THE AMENDED COUNTERCLAIM
     FOR FRAUDULENT MISREPRESENTATION BECAUSE DEFENDANTS HAVE
     MET THE PLEADING STANDARD AND THE COURT HAS SPECIFIC
     JURISDICTION OVER VAN OOSTERBOSCH ............................................................ 7

     A.  Defendants' Fraudulent Misrepresentation Claim Meets the Heightened Pleading
         Standard. ............................................................................................ 7

     B.  The Court has Specific Jurisdiction Over Jack van Oosterbosch under New York's
         Long-arm Statute, and Would not Violate the Federal Due Process Clause by Asserting
         Jurisdiction. ........................................................................................ 10

II.  SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM
     IS INAPPROPRIATE BECAUSE TRIABLE ISSUES OF FACT HAVE BEEN
     RAISED AND BECAUSE THE LOAN DOCUMENTS ARE UNCLEAR ...................... 13

     A.  Defendants' Counterclaims As Supported By The Evidence On This Motion Present
         Triable Issues Of Fact. ........................................................................... 14

     B.  The Loan Agreements Are Confusing And Ambiguous. .................................... 17

     C.  There Is A Triable Issue Of Fact As To Whether The Parties Orally Modified The
         Agreement. ......................................................................................... 19

III. THE COURT SHOULD DENY SUMMARY JUDGMENT ON PLAINTIFF'S
     FORECLOSURE CLAIM FOR THE ADDITIONAL REASON THAT
     FORECLOSURE IS AN EQUITABLE REMEDY ..................................................... 24

CONCLUSION ..................................................................................................... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 11 E. 36th LLC,*
No. 13-11506 (RG), 2014 WL 2903660 (S.D.N.Y. June 26, 2014) ........................................15

*904 Tower Apt. LLC v. Mark Hotel LLC,*
No. 10 Civ. 9701 (LLS), 2016 WL 3002423 (S.D.N.Y. May 20, 2016) ................................17

*Acito v. IMCERA Group, Inc.,*
47 F.3d 47 (2d Cir. 1995) .................................................................................................8

*Aircraft Servs. Resales LLC v. Oceanic Capital Co., Ltd.,*
No. 09 Civ. 8129 (PKC), 2013 WL 4400453 (S.D.N.Y. Aug. 14. 2013)
*aff'd*, 586 F. App'x 761 (2d Cir. 2014) ................................................................................21

*Am. Bag & Metal Co. v. Alcan Aluminum Corp.,*
115 A.D.2d 958, 497 N.Y.S.2d 787 (4th Dep't 1985) ..........................................................23

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .......................................................7

*Automated Irrigation Controls, LLC v. Watt Stopper, Inc.,*
407 F. Supp. 3d 274 (S.D.N.Y. 2019) ................................................................................21

*B. Reitman Blacktop, Inc. v. Missirlian,*
52 A.D.3d 752 (2008) .....................................................................................................20

*Bennett v. United States Lines,*
64 F.3d 62 (2d Cir. 1995) ...........................................................................................21, 25

*Brook Shopping Ctrs., Inc. v. F. W. Woolworth* Co., 215 A.D.2d 620, 628
N.Y.S.2d 318, 319 (2d Dep't 1995) ..................................................................................24

*Canterbury Realty & Equip. Corp. v. Poughkeepsie Sav. Bank,*
135 A.D.2d 102 (3d Dep't 1988) ......................................................................................15

*Central Bank of India v. U.S. Bank Nat'l Assoc.,*
No. 18 Civ. 534 (ER), 2019 WL 1206489 (S.D.N.Y. Mar. 14, 2019) ....................................13

*Chloe v. Queen Bee of Beverly Hills, LLC,*
616 F.3d 158 (2d Cir. 2010) ........................................................................................11, 12

*Chocolas Assoc. Ltd. P'ship v. Handelsman,*
262 A.D.2d 133 (1st Dep't 1999) .....................................................................................13

(iii)

*City Uni. of New York v. Finalco, Inc.*,
93 A.D.2d 792 (1st Dep't 1983) ........................................................................20

*Cohen v. Koenig*,
25 F.3d 1168 (2d Cir. 1994)................................................................................8

*Comprehensive Mfg. Assocs. V. SupplyCore, Inc.*,
No. 3:15-cv-835, 2016 WL 4444883 (N.D.N.Y. Aug. 23, 2016)..........................14

*Diallo v. Whole Foods Mkt. Grp., Inc.*,
No. 16 Civ. 9228 (PAE) (KNF), 2019 WL 140728 (S.D.N.Y. Jan. 9, 2019).........13

*Dreni v. PrinterOn Am. Corp.*,
No. 1:18-cv-12017-MKV, 2021 WL 4066635 (S.D.N.Y. Sept. 3, 2021)..............19

*Dunlop-McCullen v. Pascarella*,
No. 97 CV 195 (PKL) (DFE), 2002 WL 31521012 (S.D.N.Y. Nov. 13, 2002) ....................21

*Egelston v. State Univ. Coll. at Geneseo*,
535 F.2d 752 (2d Cir. 1976)..............................................................................12

*ESPN, Inc. v. Office of Comm'r of Baseball*,
76 F.Supp.2d 383 (S.D.N.Y. 1999).....................................................................13

*Fid. Network, LLC v. Hurley*,
No. 1:19-cv-379-GHW, 2020 WL 4475422 (S.D.N.Y. Aug. 3, 2020)............15, 16

*First City Fed. Sav. Bank v. Dennis*,
680 F. Supp. 579 (S.D.N.Y. 1988)......................................................................23

*General Elec. Capital Corp. v. Armadora, S.A.*,
37 F.3d 41 (2d Cir. 1994) .................................................................................22

*Gordon v. Vincent Youmans, Inc.*,
358 F.2d 261 (2d Cir. 1965)..............................................................................17

*Hecht v. Gertler*,
196 A.D.2d 541 (2d Dep't 1993) .......................................................................19

*Holland v. Ryan*,
307 A.D.2d 723 (4th Dep't 2003) ......................................................................25

*Ion Audio, LLC v. Bed, Bath & Beyond, Inc.*,
No. 15-CV-8292 (KMW), 2019 WL 1494398 (S.D.N.Y. April 2, 2019) .............21

*In re Coudert Bros.*,
487 B.R. 375 (S.D.N.Y. 2013).............................................................................19

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007)................................................................................7

*La Pecora Bianca Holdings, LLC v. Empowered Hosp. LLC*,
    No. 1:19-cv-09655-ALC, 2021 WL 1164267 (S.D.N.Y. Mar. 25, 2021) ................9

*Lehman Bros. Holdings Inc. v. Walji*,
    No. 09 Civ.1995(SHS), 2011 WL 1842838 (S.D.N.Y. May 11, 2011).................24

*Levine v. Greece Cent. Sch. Dist.*,
    353 F. App'x 461 (2d Cir. 2009) ...........................................................22

*Lombard v. Booz–Allen & Hamilton, Inc.*,
    280 F.3d 209 (2d Cir. 2002)................................................................16

*Lucente v. International Business Machines Corp.*,
    310 F.3d 243 (2d Cir. 2002)................................................................13

*Merrill Lynch Interfunding, Inc. v. Argenti*,
    155 F.3d 113,122 (2d Cir. 1998)............................................................20

*Miller v. Calotychos*,
    303 F. Supp. 2d 420 (S.D.N.Y. 2004).......................................................12

*Nationstar Mortg., LLC v. Francis*,
    185 A.D.3d 701 (2d Dep't 2020)............................................................24

*Onewest Bank, FSB v. Kaur*,
    172 A.D.3d 1392 (2d Dep't 2019) ..........................................................24

*Peoples Westchester Sav. Bank v. Ganc*,
    715 F. Supp. 588 (S.D.N.Y. 1989)........................................................9, 23

*R.G. Grp., Inc. v. The Horn & Hardart Co.*,
    751 F.2d 69 (2d Cir. 1984)................................................................20

*Reynolds v. Lifewatch, Inc.*,
    136 F. Supp. 3d 503 (S.D.N.Y. 2015)........................................................8

*Rose v. Spa Realty Assoc.*,
    42 N.Y.2d 338 (1977) ..................................................................20, 21

*S.E.C. v. Collins & Aikman Corp.*,
    524 F. Supp. 2d 477 (S.D.N.Y. 2007)........................................................8

*Scutti Enters., LLC. v. Park Place Ent. Corp.*,
    322 F.3d 211 (2d Cir. 2003)................................................................15

*Senior Health Ins. Co. of Pa. v. Beechwood Re Ltd.*,
    345 F. Supp. 3d 515 (S.D.N.Y. 2018)...................................................................7

*Sharbat v. Iovance Biotherapeutics, Inc.*,
    2021 WL 1164717 (S.D.N.Y. Mar. 26, 2021) ........................................10, 11, 12

*In re S. African Apartheid Litig.*,
    617 F. Supp. 2d 228 (S.D.N.Y. 2009).................................................................23

*Stanford v. Kuwait Airways Corp.*,
    648 F.Supp. 1158 (S.D.N.Y. 1986)....................................................................23

*Sterling v. Interlake Indus. Inc.*,
    154 F.R.D. 579 (E.D.N.Y. 1994).......................................................................22

*Thompson v. Gjivoje*,
    896 F.2d 716 (2d Cir. 1990)...............................................................................19

*In re Tremont Secs. Law, State Law, & Ins. Litig.*,
    No. 08 Civ. 11117, 2013 WL 5393885 (S.D.N.Y. Sept. 26, 2013) ....................15

*Wall v. CSX Transp., Inc.*,
    471 F.3d 410 (2d Cir. 2006).................................................................................8

*Wallace Church & Co., v. Wyattzier, LLC*,
    No. 1:20-cv-01914-CM, 2020 WL 4369850 (S.D.N.Y. July 30, 2020) .....10, 11, 12

*Winston v. Mediafare Ent. Corp.*,
    777 F.2d 78 (2d Cir. 1985).................................................................................19

*Yih v. Taiwan Semiconductor Mfg. Co.*,
    815 F. App'x 571 (2d Cir. 2020) .......................................................................10

*Yonkers Racing Corp. v. Catskill Regional Off-Track Betting Corp.*,
    159 A.D.2d 615 (2d Dep't 1990) .......................................................................17

**Statutes**

New York General Obligations Law § 15-301 ........................................20, 21, 23, 24

**Other Authorities**

F.R.C.P. 8(b)(6) ..........................................................................................................14

Fed. R. Civ. P. 9(b) .......................................................................................................7

Fed. R. Civ. P. 12(b)(2) and (6) ...................................................................................1

Fed. R. Civ. P. 56.................................................................................................................1

N.Y. C.P.L.R. § 302(a)(1)................................................................................................10, 11

<u>**PRELIMINARY STATEMENT**</u>

Defendants Capstone Credit, LLC and Capstone Capital Group, LLC (together, the "Capstone Entities") and Joseph F. Ingrassia ("Ingrassia") (together, "Defendants") respectfully submit this memorandum of law in opposition to (1) the motion made by De Veste B.V. ("De Veste") and Jack van Oosterbosch ("van Oosterbosch") (collectively, the "Counterclaim Defendants") pursuant to Fed. R. Civ. P. 12(b)(2) and (6) to dismiss the single amended counterclaim alleged against them and (2) the motion for partial summary judgment made by Plaintiff Stichting Juridisch Eigendom De Veste Beleggingsfondsen ("Plaintiff" or "Stichting") pursuant to Fed. R. Civ. P. 56 on its breach of contract (Count 1) and foreclosure on personal property (Count 3) claims.

For purposes of both these motions, Plaintiff presents this case as a simple contract dispute, but it is anything but that. The history of the parties' long business relationship, as described in the Amended Counterclaims, and in the affidavits of Joseph Ingrassia, Ruth Abady and Jack van Oosterbosch, makes that abundantly clear. As the Amended Counterclaims allege, and as the affidavits and accompanying exhibits confirm, the Loan and Security Agreements, Line of Credit Notes, and Intercreditor Agreement at issue (the "Loan Documents") were not intended simply to extend a loan to the Capstone Entities; rather, they were part of a concerted effort to help Plaintiff and Counterclaim Defendants resolve issues with their regulators in the Netherlands. By suggesting that the Court need only look to the language of the agreements, Plaintiff ignores the longstanding business relationship between the parties, and the purpose behind the agreements.

Defendants do not ask the Court to ignore the existence of any relevant agreements when considering Plaintiff's partial summary judgment, but rather to consider such agreements in

context, which New York law not only permits, but encourages. In fact, looking to the language of the agreements alone would only reveal that the Loan Documents are confusing and ambiguous. The Court will need extrinsic evidence to understand these documents, particularly with respect to treatment of collateral, which is key to Plaintiff's foreclosure cause of action. In addition, there is a further factual issue precluding summary judgment, that is, the question of the validity of the Modification Agreements executed only by Defendants, but agreed to by van Oosterbosch. The partial summary judgment motion should be denied.

The Counterclaim Defendants also seek to dismiss Defendants' fraudulent misrepresentation counterclaim, asserting that Defendants fail to adequately plead the claim, and that the Court lacks jurisdiction over van Oosterbosch. This motion should be denied as well. Defendants have met the pleading standard, providing more than adequate detail when the counterclaims were amended. Moreover, the Court has jurisdiction over van Oosterbosch based on, among other things, the ongoing contractual relationship with the Capstone Entities, his visits to New York, and the applicable choice-of-law provision in the agreements underlying this dispute.

## STATEMENT OF FACTS

### I. The Parties Maintain a Business Relationship for More than a Decade.

The Capstone Entities, established in 2009, specialize in providing dependable financing for construction, manufacturing, publishing, temporary staffing, sales, advertising and public relations through factoring and purchase order financing. Affidavit of Joseph Ingrassia ("Ingrassia Aff.") ¶ 2. In 2009 Stichting and a fund managed by De Veste and van Oosterbosch invested in an off-shore fund, Capstone Cayman Current Liquidity Fund, LP ("CCCLF"), and

Stichting became a limited partner in CCCLF. Ingrassia Aff. ¶ 2; Chin Decl. Ex. 2 (van Oosterbosch Tr. 30:14-31:12); Amended Counterclaims ¶ 8.

Since 2009, van Oosterbosch has been the principal, and often only, means available to Defendants of communicating with Plaintiff, De Veste and their predecessors in interest. Amended Counterclaims ¶ 4; Declaration of van Oosterbosch ("van Oosterbosch Decl.") ¶ 15. He visited New York City once or twice a year after he made his initial due diligence trip in 2009 to the Capstone Entities' offices. Amended Counterclaims ¶ 4; Ingrassia Aff. ¶ 3. He also attended events with Ingrassia in New York, and sent investors to meet with Mr. Ingrassia and become further acquainted with Capstone. Amended Counterclaims ¶ 4; Ingrassia Aff. ¶ 3.

## II. The Parties Enter into the Loan Documents in Response to Issues Raised by Regulators in the Netherlands.

Several years after the parties' business relationship began, changes in the regulatory framework governing the operations of the funds that they operated required changes in the way Stichting and De Veste invested in CCCLF. Van Oosterbosch Decl. ¶¶ 8-11. The Dutch regulatory Authority for the Financial Markets ("AFM") raised questions about De Veste's operations and ultimately cancelled its license. Chin Decl. Ex. 2 (van Oosterbosch Tr. 95:20-97:22); Ingrassia Aff. ¶¶ 4, 7. Van Oosterbosch frequently requested Defendants' assistance in responding to the questions raised by AFM, which Defendants provided. Ingrassia Aff. ¶¶ 4, 5, 7, 12. Defendants made it possible for Stichting, De Veste and van Oosterbosch to continue their investment in CCCLF by agreeing to enter into the Loan and Security Agreements ("LSA") and Intercreditor Agreement. Ingrassia Aff. ¶ 7; van Oosterbosch Decl. ¶ 12.

The parties did not execute the Loan Documents to simply extend a loan to Defendants, but to allow van Oosterbosch, De Veste and Plaintiff to address problems with their regulators in the Netherlands. Amended Counterclaims ¶ 11; Ingrassia Aff. ¶ 7; van Oosterbosch Decl. ¶ 12.

The Capstone Entities accommodated Stichting's and van Oosterbosch's requests whenever feasible in light of the longstanding relationship between Defendants and van Oosterbosch, Plaintiff and De Veste and their predecessors in interest. Ingrassia Aff. ¶ 7.

After execution of these documents, the business relationship of the parties that had developed since 2009 did not change substantially: van Oosterbosch continued to treat CCCLF and Defendants essentially as a partner in investment endeavors. Ingrassia Aff. ¶ 10. It was not unusual for De Veste to make and immediately withdraw a redemption request, and the parties typically discussed the requests before and after De Veste made them. Amended Counterclaims ¶ 13; Chin Decl. Ex. 2 (Oosterbosch Tr. 110:2-111:13). Among other things, De Veste continued to submit redemption requests far in advance of any payment date and often cancelled them. Chin Decl. Ex. 2 (van Oosterbosch Tr. 110:2-111:13).

## III.    Plaintiff Declares Default and Refuses to Honor the Modification.

In early 2020, van Oosterbosch and Ingrassia discussed (on multiple occasions) the financial situation that the global COVID-19 pandemic had caused, and Ingrassia advised him that the Capstone Entities would not be able to honor redemption requests until conditions improved. Amended Counterclaims ¶ 14; Ingrassia Aff. ¶ 9; Chin Decl. Ex. 2 (van Oosterbosch Tr. 103:16-104:1). Notwithstanding these communications, in March and April 2020, Plaintiff demanded pre-payment of ten percent of the outstanding principal under the Loan Agreements. Amended Counterclaims ¶ 14. As expected, Defendants were unable to honor the redemption requests for March 2020 and April 2020. Amended Counterclaims ¶ 15. Consequently, in June 2020, Plaintiff declared an Event of Default and accelerated the balance due under the Loan Agreements. *Id.*

The parties' business relationship continued; Defendants continued sharing financial information with Plaintiff, De Veste and van Oosterbosch through weekly meetings, continued their discussions about the redemption requests—including alternative solutions to resolve the redemption issue—and continued to comply with van Oosterbosch's and De Veste's requests for assistance. Amended Counterclaims ¶ 17; Ingrassia Aff. ¶ 10.

On December 3, 2020, Ingrassia and Van Oosterbosch discussed by telephone waiving the default and amending the Notes to reflect interest payable through October 2020 and payments to reduce principal thereafter until paid in full, addressing any interest accrued during the wind-down period once the final principal payment was made. Ingrassia Aff. ¶ 11. On December 7, 2020, van Oosterbosch and Ingrassia clarified over email the payments to be made, and Ingrassia advised that Capstone's in-house counsel had been asked to prepare the amendment. Ingrassia Aff. ¶ 11 and Ex. 3.

On January 15, 2021, Ingrassia confirmed to van Oosterbosch that Capstone would present a modification to the LSAs memorializing their verbal agreement that payments after the August and September interest payments would be applied to principal until the note was paid in full. Ingrassia Aff. ¶ 12 and Ex. 4. Van Oosterbosch represented that, after the Capstone Entities wired an initial payment, Plaintiff would execute a Modification of the LSAs and Notes (the "Modification"), to which the parties had fully agreed. Amended Counterclaims ¶ 18; Ingrassia Aff. ¶ 13. He never suggested to Defendants that he lacked authority to negotiate the Modification. Amended Counterclaims ¶ 18; Ingrassia Aff. ¶ 13. Defendants understood that van Oosterbosch was negotiating on behalf of Plaintiff and De Veste, and keeping Plaintiff and De Veste apprised of such negotiations. Amended Counterclaims ¶ 18; Ingrassia Aff. ¶ 13.

The Modification, as drafted, provided that once the Capstone Entities made outstanding interest payments in the amounts of $457,270.70 and $372,893.83, Plaintiff would waive the Event of Default, and any payments over the outstanding interest amount would be applied to the principal of the Notes. Ingrassia Aff. ¶ 14. On February 26, 2021, the Capstone Entities wired $1 million to Plaintiff, believing that van Oosterbosch had authority to agree to the Modification. Ingrassia Aff. ¶¶ 13-14. On February 28, 2021, the Capstone Entities emailed the Modification executed by the Capstone Entities to Van Oosterbosch, per the parties' agreement. Amended Counterclaims ¶ 19; Ingrassia Aff. ¶ 14; van Oosterbosch Decl., Ex. 8. In his email, Ingrassia included an updated account statement reflecting the February 26 wire, and requested that van Oosterbosch have his administrator sign and return a copy for Defendants' files. Amended Counterclaims ¶ 19; Ingrassia Aff. ¶ 14.

Van Oosterbosch repeatedly confirmed that the amounts in the account statement that Ingrassia sent were accurate. Ingrassia Aff. ¶ 15. On February 29, 2021, as final confirmation of the agreement, van Oosterbosch emailed the Chief Financial Officer of the Capstone Entities, Ruth Abady-Soltanovici, requesting that the account statement be revised to match his understanding of the agreement—that is, that Defendants by their $1 million wire had paid the interest for August and September 2020 rather than September and October 2020. Ingrassia Aff. ¶ 15; Amended Counterclaims ¶ 20; Affidavit of Ruth Abady ("Abady Aff.") ¶ 7.

Even after this, Stichting declined to execute the documents modifying the LSAs and Line of Credit Notes, and commenced this lawsuit. Ingrassia Aff. ¶ 15; Amended Counterclaim ¶ 20. Plaintiff and Counterclaim Defendants retained the $1 million payment. Ingrassia Aff. ¶ 15; Amended Counterclaims ¶ 20. Plaintiff later contacted some of Defendants' customers, advising them of Defendants' alleged default, and demanding payment of any monies owed to

6

the Capstone Entities. Amended Counterclaims ¶ 21; Ingrassia Aff. ¶ 16 and Ex. 5. Plaintiff

targeted Defendants' most important customers, using the information that Capstone shared with

Plaintiff, De Veste and Oosterbosch over the course of their relationship. Amended

Counterclaims ¶ 21; Ingrassia Aff. ¶ 16. Most of these customers have since terminated business

with Defendants. Amended Counterclaims ¶ 21; Ingrassia Aff. ¶ 16.

**ARGUMENT**

I.    **THE COURT SHOULD NOT DISMISS THE AMENDED COUNTERCLAIM
      FOR FRAUDULENT MISREPRESENTATION BECAUSE DEFENDANTS HAVE
      MET THE PLEADING STANDARD AND THE COURT HAS SPECIFIC
      JURISDICTION OVER VAN OOSTERBOSCH**

To survive a motion to dismiss for failure to state a claim upon which relief can be

granted, "a complaint must contain ... sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173

L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955,

(2007)). In assessing a complaint, courts draw all reasonable inferences in favor of the non-

movant. *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).

The Court should deny Counterclaim Defendants' motion to dismiss. Defendants have

sufficiently pled a claim for fraudulent misrepresentation, and the Court has jurisdiction over

Counterclaim Defendant Jack van Oosterbosch based on the long-arm statute, which satisfies due

process concerns.

   A.    **Defendants' Fraudulent Misrepresentation Claim Meets the Heightened
         Pleading Standard.**

A party asserting a fraud claim under New York law is subject to the heightened pleading

standard for pleading fraud claims in federal court. *See* Fed. R. Civ. P. 9(b); *Senior Health Ins.*

*Co. of Pa. v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 525 (S.D.N.Y. 2018). To support a claim

7

for fraud, a party must demonstrate that: (1) defendant made a material misrepresentation; (2) with intent to defraud the plaintiff; (3) plaintiff reasonably relied on the misrepresentation, and (4) plaintiff suffered damages. *See Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006) (citing cases); *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 521 (S.D.N.Y. 2015) (with respect to fraud claims, the pleadings should "'specify the who, what, where, when[,] and why of the alleged fraud'") (citation omitted)). A court may also consider: (1) the nature of the case; (2) the complexity of the transaction; (3) the relationship between the parties; and (4) the amount of circumstantial detail necessary to give the adverse party notice and enable him to prepare a responsive pleading. *Id.* at 522.

To demonstrate intent to defraud, the party asserting a fraud claim need only demonstrate that the alleged facts, collectively, support "a strong inference of fraudulent intent," not whether any individualized allegation, analyzed in isolation, meets the standard. *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). A strong inference of fraudulent intent may be established by "alleging facts (1) showing that the defendant had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior of recklessness." *S.E.C. v. Collins & Aikman Corp.*, 524 F. Supp. 2d 477, 487 (S.D.N.Y. 2007) (citation omitted). The party need only provide a "minimal factual basis" to support a fraud claim. *See Cohen v. Koenig,* 25 F.3d 1168, 1173 (2d Cir. 1994) (holding that "'great specificity [is] not required with respect to…allegations of…scienter' ... because 'a plaintiff realistically cannot be expected to plead a defendant's actual state of mind.'") (citations omitted).

Here, Defendants' Amended Counterclaims satisfy the heightened pleading standard for fraudulent misrepresentation. First, Defendants properly plead facts regarding the alleged misrepresentations and speaker. Van Oosterbosch led Defendants to believe that Plaintiff would

waive the alleged event of default and enter into the Modification, and that all payments would be applied to the principal of the Notes once the Capstone Entities made certain outstanding interest payments.  Amended Counterclaims ¶¶ 18-20.

Second, Defendants properly plead facts to indicate a strong inference of fraudulent intent.  Counterclaim Defendants assert that "[t]he Amended Counterclaims do not allege or describe how the Counterclaim Defendants made a misrepresentation with 'knowledge of their falsity' and with intent to defraud."  ECF 81 at 16.  But this is not required under New York law. Here, van Oosterbosch's representation to Ingrassia that Plaintiff would enter into the Modification, and Stichting's subsequent failure to do so, is sufficient to plead the "minimum factual basis" to prove scienter.  *See La Pecora Bianca Holdings, LLC v. Empowered Hosp. LLC*, No. 1:19-cv-09655-ALC, 2021 WL 1164267, at *6 (S.D.N.Y. Mar. 25, 2021) (finding that plaintiff's allegations regarding defendants' multiple representations regarding their work experience and their subsequent incompetent performance were sufficient to plead scienter).

Third, Defendants properly plead reliance and damages.  As a preliminary matter, van Oosterbosch had apparent authority to negotiate on Stichting's behalf with respect to the Modification as the primary point of contact with the Capstone Entities, which is sufficient to create an agency relationship.  *See Peoples Westchester Sav. Bank v. Ganc*, 715 F. Supp. 588, 591 (S.D.N.Y. 1989) ("I find that Peoples Westchester acted reasonably in assuming that Citytrust was authorized to accept the funds for Onshore. Onshore allowed Citytrust to be its sole contact with Peoples Westchester. Moreover, the lender had no direct personal contact with any of the individual investors.").  Even van Oosterbosch acknowledges that he served as the primary point of contact with Defendants on behalf of Stichting for *years*.  Van Oosterbosch Decl. ¶ 15; Amended Counterclaims ¶ 4.  He also signed the LSAs and Intercreditor Agreement at issue in

this case.  Tick Decl. Exs. 3, 4, and 5.  From the Counterclaim Plaintiffs' point of view, Jack van Oosterbosch was the logical, and indeed the only, person who could negotiate a modification on Stichting's behalf.  *See* Ingrassia Affidavit, ¶ 3.  This apparent authority, in turn, supports Defendants' reasonable reliance on van Oosterbosch's representations.  Because of the longstanding relationship between the parties, Defendants reasonably relied on van Oosterbosch's representations with respect to Plaintiff's intent to enter into the Modification and waive the alleged Event of Default.

**B.** **The Court has Specific Jurisdiction Over Jack van Oosterbosch under New York's Long-arm Statute, and Would not Violate the Federal Due Process Clause by Asserting Jurisdiction**

Counterclaim Defendants also seek to dismiss Defendants' counterclaim against van Oosterbosch on the ground that the Court lacks personal jurisdiction.  To the contrary, van Oosterbosch is subject to the Court's jurisdiction under the New York long-arm statute because of, among other things, his negotiations with the Capstone Entities, his contacts with Ingrassia and the Capstone Entities in New York, and the fact that New York law governs the contracts underlying this matter.

Federal courts evaluating personal jurisdiction over out-of-state defendants must: (1) determine if jurisdiction exists under the law of the forum state; and, if so, (2) evaluate whether the exercise of personal jurisdiction comports with due process under the U.S. Constitution. *Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571, 572-73 (2d Cir. 2020) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013)); *Sharbat v. Iovance Biotherapeutics, Inc.*, No. 20 Civ. 1391 (ER), 2021 WL 1164717, at *4 (S.D.N.Y. Mar. 26, 2021).

Courts may exercise specific jurisdiction over a nonresident when he "transacts any business within the state" and the claims arise from that transaction. N.Y. C.P.L.R. § 302(a)(1); *Wallace Church & Co. v. Wyattzier, LLC,* No. 1:20-cv-01914-CM, 2020 WL 4369850, at *7 (S.D.N.Y. July 30, 2020). To determine whether a defendant transacts business in New York, courts may consider (if applicable): (i) whether the defendant has an ongoing contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) the contract's choice of law provision; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to corporation's supervision in the forum state. *Id.*

A defendant's transaction of business that satisfies New York C.P.L.R. § 302(a)(1) is unlikely to violate due process. *See Sharbat*, 2021 WL 1164717, at *7. A court conducting this inquiry must analyze whether the defendant has sufficient minimum contacts with the forum state to establish personal jurisdiction, and whether exercising personal jurisdiction is reasonable. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164-65 (2d Cir. 2010). These minimum contacts must be related to the plaintiff's claims. *Id.* at 166 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "When a controversy is related to or arises out of a defendant's contacts with the forum, the Court has said that a relationship among the defendant, the forum, and the litigation is the essential foundation of in personam jurisdiction." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 (internal quotation marks and citation omitted). Courts may assess reasonableness using five factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state

in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *Chloe*, 616 F.3d at 164-65; *Sharbat*, 2021 WL 1164717, at *7.

Here, the Court has jurisdiction over van Oosterbosch under the long-arm statute. The Loan Documents provide that New York law governs the relevant agreements. Tick Decl., Exs. 1-2. Van Oosterbosch visited New York to meet with parties to the contract regarding that contractual relationship. Amended Counterclaims ¶ 4. Van Oosterbosch visited the Capstone offices bi-annually, and attended events with Ingrassia in New York. *Id.* Moreover, van Oosterbosch sent investors to meet with Mr. Ingrassia in New York, to become better acquainted with the Capstone Entities. *Id.* These allegations have been confirmed in the Ingrassia Affirmation. Ingrassia Aff. ¶ 3. These contacts are sufficient for the Court to exercise personal jurisdiction over van Oosterbosch. *See Miller v. Calotychos*, 303 F. Supp. 2d 420, 425 (S.D.N.Y. 2004) (two meetings in 1999 and 2001 sufficient).

The Court's exercise of jurisdiction over van Oosterbosch also comports with due process. Van Oosterbosch's contacts with New York as described in the Amended Counterclaims are related to Counterclaim Plaintiffs' claims for fraudulent misrepresentation, since the claims arose from this business relationship. *Wallace Church & Co.*, 2020 WL 4369850, at *7. It is not only reasonable but fair for the Court to exercise jurisdiction over van Oosterbosch under the circumstances.

**II. SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM IS INAPPROPRIATE BECAUSE TRIABLE ISSUES OF FACT HAVE BEEN RAISED AND BECAUSE THE LOAN DOCUMENTS ARE UNCLEAR**

Summary judgment is an extreme remedy that deprives the non-moving party of the right to trial. *See Egelston v. State Univ. Coll. at Geneseo*, 535 F.2d 752, 754 (2d Cir. 1976). Accordingly, a court should not grant this relief unless it is "clear what the truth is [and] that no genuine issue remains for trial." *Diallo v. Whole Foods Mkt. Grp., Inc.*, No. 16 Civ. 9228 (PAE) (KNF), 2019 WL 140728, at *4 (S.D.N.Y. Jan. 9, 2019) (quoting *Auletta v. Tully*, 576 F. Supp. 191, 195 (N.D.N.Y. 1983) (internal quotation marks and citations omitted), *aff'd*, 732 F.2d 142 (2d Cir. 1984)).

In contract disputes, summary judgment is only proper when the contract is "wholly unambiguous"; if it is susceptible to different interpretations, and where there is relevant extrinsic evidence of the parties' actual intent, the contract's meaning becomes an issue of fact, precluding summary judgment. *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 257 (2d Cir. 2002); *Central Bank of India v. U.S. Bank Nat'l Assoc.*, No. 18 Civ. 534 (ER), 2019 WL 1206489, at *3 (S.D.N.Y. Mar. 14, 2019) ("Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate.") (citation omitted).

Under New York law, a court may allow extrinsic evidence to explain an ambiguous contract, notwithstanding the presence of an integration (or merger) clause. *See ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp. 2d 383, 404 (S.D.N.Y. 1999) ("Under New York law, [e]xtrinsic or parol evidence is admissible notwithstanding [an integration] clause where it would not modify or contradict the terms of a contract, but would explain certain ambiguities in the contract.") (internal quotation marks and citation omitted); *Chocolas Assoc. Ltd. P'ship v.*

*Handelsman*, 262 A.D.2d 133 (1st Dep't 1999) (finding that terms of settlement agreement were sufficiently ambiguous to warrant introduction of extrinsic evidence, despite existence of merger clause). Indeed, even when a contract is not ambiguous and contains an integration clause, if it does not address an issue of importance, courts will consider extrinsic evidence to determine the parties' intent. *Comprehensive Mfg. Assocs. v. SupplyCore, Inc.*, No. 3:15-cv-835, 2016 WL 4444883, at *4 (N.D.N.Y. Aug. 23, 2016).

Such precedent establishes that summary judgment is inappropriate here. Defendants' counterclaims, as supported by the affidavits and accompanying exhibits on this motion, make it clear that this is not just a contract dispute, but more akin to dissolution of a partnership. Triable issues of fact are presented by the conduct of Plaintiff and Counterclaim Defendants. Moreover, the language of the Loan Documents, coupled with the circumstances surrounding their execution, render these agreements ambiguous. Extrinsic evidence is necessary—and permissible, notwithstanding the Loan Documents' integration clause—to understand their meaning and purpose. There is also at least a triable issue of fact with respect to whether the parties effected modification of the documents.

### A. Defendants' Counterclaims As Supported By The Evidence On This Motion Present Triable Issues Of Fact.

The Amended Counterclaims present three causes of action pleaded against Plaintiff, one of which is also pleaded against De Veste and van Oosterbosch. This latter counterclaim is the subject of their motion to dismiss, discussed in Point I, <u>supra</u>. As noted in the Chin Declaration, Plaintiff has not replied to the Amended Counterclaims filed on November 19, 2021. ECF 54; Chin Decl. ¶ 4. According to F.R.C.P. 8(b)(6), the allegations have been admitted and as such, surely operate as an adequate bar to Plaintiff's motion for partial summary judgment. Even if

not deemed admitted, Defendants have made a *prima facie* case with respect to all three counterclaims and thereby raise genuine issues of material fact precluding summary judgment.

Defendants have already described the basis for their claim of fraudulent misrepresentation in Point I, supra. Those allegations have been amply supported by the Ingrassia Affidavit. Ingrassia Aff. ¶¶ 11-15.

To make a *prima facie* case for breach of the implied covenant of good faith and fair dealing: (1) the defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) the defendant must breach that duty by acting in bad faith or failing to conduct fair dealing; and (3) the breach of duty must proximately cause plaintiff's damages. *See In re 11 E. 36th LLC*, No. 13-11506 (RG), 2014 WL 2903660, at *4 (S.D.N.Y. June 26, 2014); *In re Tremont Secs. Law, State Law, & Ins. Litig.,* No. 08 Civ. 11117, 2013 WL 5393885, at *8 (S.D.N.Y. Sept. 26, 2013). Defendants establish these elements in their Amended Counterclaims, and have also supported the allegations of that pleading in the Ingrassia Affidavit and the Abady Affidavit. After so many years of doing business together, for Plaintiff and Counterclaim Defendants to turn the Loan Documents, crafted to assist them with their regulatory issues, into a weapon against Defendants, and then to refuse to honor the verbal agreement to modify the Loan Documents, surely amounts to breach of the covenant of good faith and fair dealing. Ingrassia Aff. ¶¶ 12-15; Abady Aff. ¶¶ 3-7. Resolution of such issues is not susceptible to summary judgment. *See Canterbury Realty & Equip. Corp. v. Poughkeepsie Sav. Bank*, 135 A.D.2d 102, 109 (3d Dep't 1988) (finding that an issue of fact existed with respect to whether bank officials' actions before and after providing a loan to plaintiff constituted good faith).

Defendants also provide facts that support a claim of tortious interference with business relations. To state such a claim under New York law, a party must demonstrate that: (i) plaintiff

had business relations with a third party; (ii) defendant interfered with those business relations; (iii) defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) defendants' acts injured the relationship. *Fid. Network, LLC v. Hurley*, No. 1:19-cv-379-GHW, 2020 WL 4475422, at *11 (S.D.N.Y. Aug. 3, 2020); *Scutti Enters., LLC. v. Park Place Ent. Corp.*, 322 F.3d 211, 215 (2d Cir. 2003). *Lombard v. Booz–Allen & Hamilton, Inc.,* 280 F.3d 209, 214 (2d Cir. 2002). The third element is satisfied when the defendant has either used improper means because her conduct "amounts to 'a crime or independent tort[,]'" or acted with a wrongful purpose because she acted "'for the sole purpose of inflicting intentional harm on plaintiffs.'" *Scutti Enters., LLC. v. Park Place Ent. Corp.*, 173 F. App'x 75, 76 (2d Cir. 2006) (citation omitted).

The Ingrassia Affidavit demonstrates that Plaintiff interfered with the Capstone Entities' business relations with their customers by writing letters to those customers, asserting that Defendants defaulted under the Loan Documents, and directing them to make payment directly to Plaintiff or its counsel rather than to the Capstone Entities. Ingrassia Aff. ¶ 16 and Ex. 5; Amended Counterclaims ¶ 21. Many of Defendants' most important customers terminated their relationships with them after receiving the letters. Amended Counterclaims ¶ 21; Ingrassia Aff. ¶ 16.

Unless Plaintiff is deemed to have admitted that it tortiously interfered with Defendants' business relationships, this claim presents multiple issues of fact. Plaintiff is likely to argue that it did not interfere with Defendants' business relationships, that its actions did not cause Defendants' customers to terminate their business relationships with Defendants, and that it was not improper to contact Defendants' customers. These all constitute issues of fact precluding summary judgment. In particular, the issue of whether Plaintiff acted solely to harm Defendants

concerns Plaintiff's subjective intent, which can rarely be decided on a summary judgment motion. *See Fid. Network, LLC*, 2020 WL 4475422, at *12 (finding issues of material fact regarding whether defendant acted through improper means or with a wrongful purpose, and that "'questions of subjective intent'—such as whether [defendant] acted solely to harm [plaintiff]— '[could] rarely be decided by summary judgment.'") (citations omitted); *904 Tower Apt. LLC v. Mark Hotel LLC*, No. 10 Civ. 9701 (LLS), 2016 WL 3002423, at *6 (S.D.N.Y. May 23, 2016) (denying summary judgment on tortious interference claims in part because "questions of the plaintiffs' subjective intent [were] crucial to the tortious interference counterclaim, and such factual inquiries are generally inappropriate for resolution on summary judgment."). Accordingly, the counterclaims as supported by Defendants' submissions on this motion all raise issues of fact sufficient to bar summary judgment.

### B.     The Loan Agreements Are Confusing And Ambiguous

The agreements that Plaintiff seeks to enforce are confusing and ambiguous, rendering a trial on the facts necessary to establish the parties' intent. *Gordon v. Vincent Youmans, Inc.*, 358 F.2d 261, 264 (2d Cir. 1965) ("We believe that these doubts as to the meaning of the release and the two assignments preclude summary judgment. The three agreements present a confusing picture. The case must be remanded for a trial of the facts in order to resolve the doubts. There is no other way to establish the true intent of the parties.").

One source of confusion is the interplay between the LSAs and the Intercreditor Agreement. Section 4.1 of the LSAs states:

> To secure the payment and performance in full of the Obligations, the Borrower hereby pledges and grants to the Lender, *subject to* the Intercreditor Agreement, a first priority continuing general lien and security interest in all of the now owned and hereafter acquired Collateral, and all proceeds and products thereof.

Copies of the LSAs are attached to the Tick Declaration as Exhibits 3 and 4 (emphasis supplied).

Multiple courts have found the phrase "subject to" ambiguous. *See, e.g.*, *Yonkers Racing Corp. v. Catskill Regional Off-Track Betting Corp.*, 159 A.D.2d 615, 621 (2d Dep't 1990) (finding provision with "subject to" language ambiguous). Moreover, Section 4.1 is hard to reconcile with the referenced Intercreditor Agreement, which contemplates *shared* collateral between Stichting and CCCLF, and the parties having equal priority under certain circumstances:

> Notwithstanding the date, time, method, manner or order of grant, attachment or perfection of any lien securing STICHTING and CCCLF Obligations granted on shared collateral, and notwithstanding any provision of the UCC of any jurisdiction, or any applicable law or the Loan Document entered into with each of STICHTING and CCCLF or any defect or deficiencies in the Liens securing STICHTING and CCCLF Obligations or any other circumstance whatsoever, STICHTING and CCCLF agree that *each of their Liens on shared collateral shall be of equal priority*.

A copy of the Intercreditor Agreement is attached to the Tick Declaration as Exhibit 5 (emphasis supplied). Some confusion is evident in correspondence between principals Jack van Oosterbosch and Joe Ingrassia. *See* Ex. 6 to van Oosterbosch Declaration. Indeed, Plaintiff's fraudulent misrepresentation claim against all Defendants, including Mr. Ingrassia individually, seems to be the result of confusion over treatment of collateral pursuant to the Loan Documents. Ingrassia Aff. ¶ 17; Chin Decl. ¶ 5.

In addition, although the parties often refer to payments by the Capstone Entities as "redemptions" (*see, e.g.*, Petrakov Decl. Ex. 9, van Oosterbosch Decl. Ex. 7), "redemption" is not defined anywhere in the LSAs. The term "redemption" is more typical of the investment relationship that existed *prior to* the restructuring of the CCCLF investment to comply with regulatory requirements. Its continued use in the parlance of Plaintiff and Counterclaim Defendants confirms that the parties continued to operate much as they did before the

restructuring, as does van Oosterbosch's testimony about the practice of "redemptions". Chin Decl. Ex. 2 (van Oosterbosch Tr. 110:4-112:8).

The Court should admit extrinsic evidence to resolve such issues. In doing so, the Court should consider the circumstances surrounding the parties' decision to enter the Loan Documents to analyze their purpose and meaning, which New York law encourages. *See Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990) ("[A] court should accord [contractual] language its plain meaning giving due consideration to 'the surrounding circumstances [and] apparent purpose which the parties sought to accomplish.'") (citation omitted); *In re Coudert Bros.*, 487 B.R. 375, 389 (S.D.N.Y. 2013) (court need not "turn a blind eye to context" when analyzing whether a contract is ambiguous); *Dreni v. PrinterOn Am. Corp.*, No. 1:18-cv-12017-MKV, 2021 WL 4066635, at *4 (S.D.N.Y. Sept. 3, 2021) (finding that court properly considered both the plain terms of employment agreement and commission plan and the context of circumstances surrounding the employment agreement, in determining that commission plan was ambiguous).

Here, the circumstances of the parties' execution of the Loan Documents confirm that extrinsic evidence is appropriate. This was not a simple loan agreement; the parties were attempting to convert an investment in an off-shore fund previously structured as a limited partnership into lines of credit to enable Stichting, De Veste and van Oosterbosch to continue their investment in CCCLF and satisfy their regulators. Ingrassia Aff. ¶ 7; van Oosterbosch Decl. ¶¶ 12-14. That such a conversion resulted in documents that are confusing is not surprising.

### C. There Is A Triable Issue Of Fact As To Whether The Parties Orally Modified The Agreement.

Under New York law, parties may enter into a binding contract without memorializing their agreement in a fully executed document, even if the parties contemplated a writing to

evidence their agreement.  *See Winston v. Mediafare Ent. Corp.,* 777 F.2d 78, 80 (2d Cir. 1985) (applying New York law); *Hecht v. Gertler*, 196 A.D.2d 541 (2d Dep't 1993) (finding that parties had initiated performance under oral agreement and considered execution of a written agreement a mere formality).  Moreover, courts have found it inappropriate to determine the parties' intent with respect to when they would be bound by an agreement at the summary judgment stage.  *See City Uni. of New York v. Finalco, Inc.*, 93 A.D.2d 792, 793 (1st Dep't 1983) (finding that the issue of whether parties intended to be bound before or after executing a formal written agreement was a fact issue precluding summary judgment).

Plaintiff contends that, under New York General Obligations Law ("GOL") § 15-301, a provision that an agreement cannot be changed without express written agreement prevents a finder of fact from enforcing an oral, unsigned agreement.  However, Plaintiff fails to address two well-settled exceptions to this rule.  GOL § 15-301 does not bar proof of partial performance of an oral modification when that partial performance is unequivocally referable to the oral agreement, or when the doctrine of equitable estoppel applies.  *Rose v. Spa Realty Assoc.*, 42 N.Y.2d at 340.  Both exceptions create triable issues of fact here.

In cases involving a no-oral-modification clause, when there is partial performance of the oral agreement and the performance is "unequivocally referable" to the modification, the oral agreement may be enforced.  *Rose*, 42 N.Y.2d at 341; *B. Reitman Blacktop, Inc. v. Missirlian*, 52 A.D.3d 752, 753 (2008).  The partial performance doctrine is based on the premise that "a party seeking to avoid an agreement who accepts performance tendered by a party seeking to enforce that agreement either: (1) is estopped from denying the existence of the agreement because he accepted the benefit of the very agreement he is now seeking to avoid; or (2) that his conduct in accepting the tendered performance serves as an affirmative ratification of the existence of the

agreement." *Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113,122 (2d Cir. 1998); *see also R.G. Grp., Inc. v. The Horn & Hardart Co.*, 751 F.2d 69, 75–76 (2d Cir. 1984) ("[P]artial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts performance signals, by that act, that it also understands a contract to be in effect.").

Courts applying New York law have frequently held that the issue of whether the parties' conduct is unequivocally referable to an oral modification of a written agreement creates triable issues of fact. *See, e.g.*, *Automated Irrigation Controls, LLC v. Watt Stopper, Inc.*, 407 F. Supp. 3d 274, 284-85 (S.D.N.Y. 2019); *see also Aircraft Servs. Resales LLC v. Oceanic Capital Co., Ltd.*, No. 09 Civ. 8129 (PKC), 2013 WL 4400453, at *6 (S.D.N.Y. Aug. 14. 2013), *aff'd*, 586 F. App'x 761 (2d Cir. 2014) (oral modification found enforceable at trial). Resolution of the issue requires a fact-specific inquiry regarding the parties' conduct and whether that conduct is incompatible with the written agreement.

Under the second exception to GOL § 15-301, once a party to a written agreement has induced another's significant and substantial reliance upon an oral modification, the first party may be estopped from invoking the statute to bar proof of that oral modification. *Rose*, 42 N.Y.2d at 344. "Estoppel is usually a question of fact inappropriate for summary judgment." *Dunlop-McCullen v. Pascarella*, No. 97 Civ. 0195 (PKL) (DFE), 2002 WL 31521012, at *15 (S.D.N.Y. Nov. 13, 2002); *Ion Audio, LLC v. Bed, Bath & Beyond, Inc.*, No. 15-CV-8292 (KMW), 2019 WL 1494398, at *10 (S.D.N.Y. April 2, 2019) (finding that equitable estoppel was inappropriate for resolution on summary judgment); *see also Bennett v. United States Lines*, 64 F.3d 62, 65 (2d Cir. 1995) ("Whether equitable estoppel applies presents an issue of fact.").

Under New York law, a party asserting equitable estoppel must demonstrate: (1) an act constituting a concealment of facts or a false misrepresentation; (2) an intention or expectation

that such acts will be relied upon; (3) actual or constructive knowledge of the true facts by the wrongdoers; (4) reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment. *General Elec. Capital Corp. v. Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir. 1994); *see also Sterling v. Interlake Indus. Inc.*, 154 F.R.D. 579, 585 (E.D.N.Y. 1994). "There does not have to be an actual attempt to mislead"; instead, "[i]t is sufficient that the party being estopped knew or had reason to believe that their acts or inaction might prejudice the party asserting the estoppel." *Id*. at 585. "Moreover, to support an equitable estoppel argument, a party must show that its detrimental reliance was reasonable under the circumstances." *Levine v. Greece Cent. Sch. Dist.,* 353 F. App'x 461, 464 (2d Cir. 2009) (citing *Paese v. Hartford Life Accident Ins. Co.,* 449 F.3d 435, 447 (2d Cir. 2006)).

Here, issues of fact regarding the oral modification to the Loan Documents preclude summary judgment. First, the Court should not assess whether the parties intended to be bound by the Modification without an executed writing at the summary judgment stage. Second, there are issues of fact regarding whether the partial performance or equitable estoppel exceptions apply.

With respect to partial performance, the $1 million payment that Capstone made to Plaintiff, and Plaintiff's acceptance of it, supports the validity of the Modification. This payment is also unequivocally referable to the agreement, as the parties' communications indicate that once the Capstone Entities made the interest payments for August 2020 and September 2020, the alleged default would be waived and subsequent payments would be applied to principal. They made the payments by means of the $1 million wire, followed shortly thereafter by transmittal of the Modification Agreements. The payment is unequivocally referable to the agreement. Ingrassia Aff. ¶¶ 12-14.

The facts also support an argument for equitable estoppel. Stichting's and van Oosterbosch's actions suggested that the latter could negotiate an agreement on Stichting's behalf. Ingrassia Aff. ¶¶ 11-15. The fact that Stichting accepted the benefit (the $1 million payment) that van Oosterbosch negotiated further demonstrates that van Oosterbosch had authority to negotiate the agreement. *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 273 (S.D.N.Y. 2009) ("The acts of an agent are imputed to the principal if the principal adopts the unauthorized act of his agent in order to retain a benefit for himself. Even mere acquiescence is sufficient to infer adoption of wrongdoing." (internal quotations marks and citations omitted)); *see also First City Fed. Sav. Bank v. Dennis,* 680 F. Supp. 579, 585 (S.D.N.Y. 1988) (agency relationship may be implied where principal recognizes and acquiesces in an agent's act). Alternatively, this is a separate issue of fact precluding summary judgment. Courts have found that an issue of fact existed with respect to an agent's authority when that agent was a primary contact for the opposing party. *See Peoples Westchester Sav. Bank*, 705 F. Supp. at 169 (finding that issue of fact existed regarding whether party reasonably relied on belief that intermediary between the parties was authorized to accept funds without inquiring into intermediary's actual authority); s*ee Stanford v. Kuwait Airways Corp.,* 648 F. Supp. 1158, 1162 (S.D.N.Y. 1986) ("The existence of apparent authority is a question of fact...."). Here Jack van Oosterbosch was undeniably the primary contact for the Defendants with Plaintiff. Van Oosterbosch Decl. ¶ 15; Ingrassia Aff. ¶ 3.

Defendants reasonably relied on van Oosterbosch's representations based on the parties' longstanding relationship. Ingrassia Aff. ¶ 13. *Am. Bag & Metal Co. v. Alcan Aluminum Corp.,* 115 A.D.2d 958, 959, 497 N.Y.S.2d 787 (4th Dep't 1985) ("[A] party may by its conduct and words be estopped from invoking the provisions in [GOL] § 15-301" despite contractual

provision requiring waivers be in writing); *Brook Shopping Ctrs., Inc. v. F. W. Woolworth* Co., 215 A.D.2d 620, 621-22, 628 N.Y.S.2d 318, 319 (2d Dep't 1995) (landlord bound by oral modification of lease where it had made written and testimonial admissions as to that modification).

Plaintiff fails to address the partial performance and equitable estoppel exceptions to GOL § 15-301, even though they clearly apply under these circumstances. For all these reasons, summary judgment should be denied on the breach of contract claim.

## III. THE COURT SHOULD DENY SUMMARY JUDGMENT ON PLAINTIFF'S FORECLOSURE CLAIM FOR THE ADDITIONAL REASON THAT FORECLOSURE IS AN EQUITABLE REMEDY

Under New York's Uniform Commercial Code, after default, a secured party "may reduce a claim to judgment, foreclose, or otherwise enforce the ... security interest ... by any available judicial procedure." *Lehman Bros. Holdings Inc. v. Walji*, No. 09 Civ. 1995(SHS), 2011 WL 1842838, at *4 (S.D.N.Y. May 11, 2011) (citation omitted). The party may also take possession of the collateral. *Id.* To obtain summary judgment in a foreclosure action, the moving party must demonstrate that there is no genuine issue of material fact concerning whether it is a secured party and the opposing party has defaulted. *Id.*

A foreclosure action is equitable in nature, and triggers the equitable powers of the court. *Nationstar Mortg., LLC v. Francis*, 185 A.D.3d 701, 702 (2d Dep't 2020). "'Once equity is invoked, the court's power is as broad as equity and justice require[.]'" *Id.* (quoting *Onewest Bank, FSB v. Kaur,* 172 A.D.3d 1392, 1394 (2d Dep't 2019)). "In an action of an equitable nature, the recovery of interest is within the court's discretion. The exercise of that discretion will be governed by the particular facts in each case, including any wrongful conduct by either party." *Onewest Bank,* 172 A.D.3d at 1394 (internal quotation marks and citation omitted). The

doctrine of unclean hands or equitable estoppel may operate to bar the equitable remedy of foreclosure, and the applicability of such defenses makes resolution by summary judgment inappropriate. *Holland v. Ryan*, 307 A.D.2d 723, 725 (4th Dep't 2003) ("Defendants' sworn statements are sufficient to raise a triable issue of fact whether the basis of this action 'is immoral and one to which equity will not lend its aid.'") (citation omitted); *Bennett,* 64 F.3d at 65 ("Whether equitable estoppel applies presents an issue of fact.").

Here, the Court should deny summary judgment on Plaintiff's foreclosure claim. Beyond stating that it is moving for summary judgment on this cause of action, Plaintiff has made no effort to establish its right to such relief other than including an erroneous reference to a UCC-1 filing in its Statement of Undisputed Material Facts. Statement 5 in ECF 82. In fact, effecting foreclosure on collateral by summary judgment is peculiarly inappropriate here because, as pointed out in Point II B <u>supra</u>, it is treatment of collateral that is one of the points of ambiguity that must prevent summary judgment on the breach of contract claim. Under the circumstances, granting foreclosure of collateral is surely inappropriate for the same reasons described in Point II above.

Moreover, because foreclosure proceedings are equitable in nature, triable issues exist with respect to whether equitable estoppel bars Plaintiff's relief on its claims. Plaintiff's wrongful conduct, as described in Amended Counterclaims and in the Ingrassia Affidavit, is adequate reason to deny Plaintiff this equitable remedy, whether pursuant to the doctrine of unclean hands or by equitable estoppel.

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court should deny the motions.

Dated: New York, New York
April 1, 2022

Respectfully submitted,

**CROWELL & MORING LLP**


By:   *s/Kathy Hirata Chin*
          Kathy Hirata Chin
          Andrea Charles

590 Madison Avenue, 20th Floor
New York, New York 10022
Telephone: (212) 223-4000
Facsimile: (212) 223-4134
khchin@crowell.com
acharles@crowell.com

*Attorneys for Defendants Capstone Credit,*
*LLC, Capstone Capital Group, LLC and*
*Joseph F. Ingrassia*