# EXHIBIT 1

# Law Office of
## Steven L. Siskind
1103 Stewart Avenue, Suite 200
Garden City, New York 11530
516-222-1100

March 11, 2021

Albena Petrakov, Esq.
Offit Kurman
590 Madison Avenue, 6th Floor
New York, NY 10022

Dear Ms. Petrakov,

In response to your letter of March 3, 2021, please be advised as follows:

First, my client categorically denies that they engaged in any fraudulent misrepresentations. In fact, the entire rationale for and existence of the September 25, 2017 Line of Credit Notes, Loan and Security Agreements and Intercreditor Agreement (the "Transaction Documents") was necessitated by your client's significant and self-caused regulatory problems in the Netherlands which was apparently created by the marketing of their "products'" to individuals who were not eligible to be investors in a Fund. As a result of your client's regulatory issues, and at your client's specific request, the parties entered into the Transaction Documents which, as noted above were at your client's specific request in order for them to attempt to avoid their regulatory problems.

The purported amendment to the Stichting UCC-1 Financing Statement was merely "form" over substance and, in any event, the Capstone financing facility with Atalaya Asset Income Fund IV, LP which necessitated the amended filing was terminated in August 2019 so the change in collateral description which, in any event, has no adverse effect on your client has not applied since that date.

Stichting has since its inception as an investor received written reports from Capstone as well as regularly scheduled Thursday morning calls where the entire portfolio is reviewed and Capstone answers any and all questions asked by Jack van Oosterbosch and his staff. This call is still held every Thursday morning at 8:30 AM (Est).

In addition, Mr. Ingrassia, prior to the COVID-19 pandemic, traveled to The Netherlands on an annual basis to present the portfolio to Stichting's investors. He has always been completely transparent in these meetings, providing all requested information about the Fund's operations whether good, bad or indifferent and answering all questions completely.

CAPSTONE0003357

During the period in which the UCC-1 was allegedly in effect, Stichting received Interest Payments of $4,683,146.06 and Redemption Payments of $700,000 and Capstone Assets as of 9/30/2018 were $196,305,087.27, and as of 9/30/2019 were $258,320,540.53.

Stichting is only aware of DLI and prior thereto, Atalaya Asset Income Fund IV, because Capstone advised them of their issues with DLI and Atalaya. In fact, Capstone advised Mr. Van Oosterbosch during one or more of the weekly calls, of both of the DLI and Atalaya financings when they occurred and that such financings would entail the sale of Capstone Credit and Capstone Capital Group receivables to a Special Purpose Entity as required by each of DLI and Atalaya in the transaction documents. Based on all of the foregoing, we fail to see how Stichting has been damaged in any way by Capstone's business action or conduct. We dispute your assertion, that Stichting's "regulatory problems" have no bearing on the parties present position. Indeed, it is Stichting's very regulatory problems that led to their request and Capstone to agree, strictly as an accommodation to Stichting, to enter into the Transaction Documents.

Further, we find it incomprehensible that, despite the deleterious effects of the COVID-19 pandemic on business throughout the world your client would expect business to proceed as though there was no economic disruption caused by the pandemic and would refuse to take responsibility for the issues created by their own deliberate actions in violation of the requirements and standards of their regulators. Finally, Capstone has previously provided all information that Stichting's financial advisor in the United States requested and answered all of their questions. Accordingly, we do not believe your client is acting in good faith and, as a result thereof reject your request for access to all of Capstone's books and records.

On behalf of Capstone, I reiterate their willingness to enter into the Modification Agreement previously forwarded to Stichting which, as I am sure you are aware, was accompanied by a good faith payment of $500,000 from each of Capstone Credit, LLC and Capstone Capital Group, LLC for a total of $1,000,000.

Very truly yours,

Steven L. Siskind

SLS:ah