**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------
STICHTING JURIDISCH EIGENDOM DE VESTE
BELEGGINGSFONDSEN,                                     Case No. 21-cv-2102-LGS-SN

                Plaintiff,

      -against-

CAPSTONE CREDIT, LLC, CAPSTONE CAPITAL
GROUP, LLC and JOSEPH F. INGRASSIA,

                Defendants.
--------------------------------------------------------------------

CAPSTONE CREDIT, LLC and CAPSTONE
CAPITAL GROUP, LLC,

                Counterclaim-Plaintiffs,

      -against-

STICHTING JURIDISCH EIGENDOM DE VESTE
BELEGGINGSFONDSEN, JACK VAN
OOSTERBOSCH, AND DE VESTE B.V.,

                Counterclaim-Defendants.
--------------------------------------------------------------------

**DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S**
**STATEMENT OF UNDISPUTED MATERIAL FACTS AND**
**DEFENDANTS' COUNTERSTATEMENT OF MATERIAL FACTS**

      Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the

Southern District of New York and Section III.C.6 of this Court's Individual Rules and

Procedures for Civil Cases, Defendants respectfully submit this response to Plaintiff's Statement

of Undisputed Material Facts.

## GENERAL OBJECTIONS

1.      Defendants object to Plaintiff's submission of unsubstantiated facts that are not supported by a citation to admissible evidence, as required by Federal Rule of Civil Procedure 56(e) and Local Civil Rule 56.1(d).

2.      Evidence cited by Defendants in support or in contradiction of any fact or proposition should not be construed as the only evidence supporting or contradicting the fact or proposition in question, and Defendants specifically reserve their right to provide additional evidence as is necessary and appropriate.

3.      The phrases "undisputed", "do not dispute" and "not disputed" shall not be construed as concessions by Defendants that a statement made by Plaintiff is material or complete, or that any evidence referenced by Plaintiff supports the proposition for which it is cited, would be admissible at trial, or is otherwise relevant.

4.      Defendants reserve their rights to challenge the admissibility of any statement made by Plaintiff and any cited evidence at trial.

5.      Defendants' assertion that they "do not dispute" any particular fact or proposition, or that such fact or proposition is "undisputed" or "not disputed", is intended solely for purposes of Plaintiff's motion for summary judgment, and Defendants reserve all other objections including, but not limited to, their right to object to or contest each of Plaintiff's assertions of fact at the appropriate time, including the right to challenge such assertions of fact at trial.

## DEFENDANTS' RESPONSES TO PLAINTIFF'S STATEMENTS
## PLAINTIFF'S STATEMENT NO. 1

Plaintiff Stichting is a foundation duly organized under the laws of the Netherlands.

Declaration of Jaap Tick, ¶ 2.

**DEFENDANTS' RESPONSE TO STATEMENT NO. 1**

Undisputed.

**PLAINTIFF'S STATEMENT NO. 2**

Defendants and Counterclaim Plaintiffs Capstone Credit, LLC, ("Capstone Credit") and Capstone Capital Group, LLC ("Capstone Capital" and together with Capstone Credit the "Capstone Companies") are Delaware limited liability companies, which provide financing for companies through various facilities, including factoring and purchase order financing. Amended Counterclaim, ECF. No. 54, ¶ 5-7.

**DEFENDANTS' RESPONSE TO STATEMENT NO. 2**

Undisputed.

**PLAINTIFF'S STATEMENT NO. 3**

On or about September 27, 2017, Plaintiff entered into a Loan and Security Agreement with Capstone Credit and into a separate Loan and Security Agreement with Capstone Capital (collectively the "LSAs"). Each of Capstone Capital and Capstone Credit executed a promissory note in favor of Plaintiff on or about the same date. Deposition Transcript of Joseph Ingrassia (Ingrassia Tr.), 25:12 – 30:15, referencing CAPSTONE 000115 – CAPSTONE 000120 (Ex. 1 to the Declaration of Jaap Tick), CAPSTONE 000121 – CAPSTONE 000139 (Ex. 3 to Declaration of Jaap Tick), CAPSTONE 000140 – CAPSTONE 000145 (Ex. 2 to Declaration of Jaap Tick), CAPSTONE 000146 – CAPSTONE 000164 (Ex. 4 to Declaration of Jaap Tick).

**DEFENDANTS' RESPONSE TO STATEMENT NO. 3**

Disputed to the extent that the LSAs and Line of Credit Notes referenced and attached as Exhibits to the Declaration of Jaap Tick were entered into as of September 25, 2017, not

September 27, 2017.

**PLAINTIFF'S STATEMENT NO. 4**

On or about September 27, 2017, Plaintiff entered into an Intercreditor Agreement with Capstone Cayman Current Liquidity Fund ("CCCLF"). CAPSTONE 000164 – CAPSTONE 000171 Ex. 5 to Declaration of Jaap Tick.

**DEFENDANTS' RESPONSE TO STATEMENT NO. 4**

Disputed to the extent that the Intercreditor Agreement referenced and attached as an Exhibit to the Declaration of Jaap Tick was entered into as of September 25, 2017, not September 27, 2017, and is identified as CAPSTONE 000165 – CAPSTONE 000171 rather than CAPSTONE 000164 – CAPSTONE 000171.

**PLAINTIFF'S STATEMENT NO. 5**

Financing statements (UCC-1s) were filed with the New York Secretary of State on or about October 31, 2017. Ex. 12 to Declaration of Albena Petrakov.

**DEFENDANTS' RESPONSE TO STATEMENT NO. 5**

Disputed as incomplete, unclear, erroneous and not supported by the evidence cited.  As the exhibit cited indicates, financing statements filed relating to the LSAs and Line of Credit Notes were filed with the Delaware Department of State on October 31, 2017.

**PLAINTIFF'S STATEMENT NO. 6**

The total principal amount of each Note is $45,000,000 with a maturity date of September 30, 2022. The annual interest rate is 12.5% pursuant to Section 1(a). Section 2 provides for a default interest equal to two percent above the annual interest rate charged.

Section 4 of the Note gives Stichting the right to call a pre-payment of the Note without penalty. Such prepayment call would be capped at 10% of the outstanding principal amount. CAPSTONE 000115 – CAPSTONE 000120 (Ex. 1 to the Declaration of Jaap Tick) and CAPSTONE 000140 – CAPSTONE 000145 (Ex. 2 to Declaration of Jaap Tick).

**DEFENDANTS' RESPONSE TO STATEMENT NO. 6**

Disputed to the extent Plaintiff paraphrases portions of the Notes and recites conclusions of law as facts.  Defendants refer to the Notes as the best evidence of their contents, noting in particular that these are Line of Credit Notes in the principal sum of "up to" $45 million.

**PLAINTIFF'S STATEMENT NO. 7**

There are no other signed agreements between the Capstone Companies and Plaintiff. Ingrassia Tr. 31:2-5.

**DEFENDANTS' RESPONSE TO STATEMENT NO. 7**

Disputed as unclear and incomplete and not supported by the evidence proffered.  Mr. Ingrassia was asked about agreements "in effect today" that are signed, and he stated "None that are signed, but there was another agreement."  Ingrassia Tr. 30:16-31:5 (Chin Decl. Ex. 3). Because it appears that Exhibit 13 to the Petrakov Declaration was not filed on ECF, this transcript excerpt including the language cited in Plaintiff's Statement No. 7 is being filed as Chin Declaration, Exhibit 3.

**PLAINTIFF'S STATEMENT NO. 8**

In accordance with its right to call pre-payment, in March and April 2020, Plaintiff demanded pre-payment of ten percent of the outstanding principal under the LSAs and the Capstone Companies did not make the payments. Amended Counterclaim, ECF. 54, ¶¶ 14-15.

**DEFENDANTS' RESPONSE TO STATEMENT NO. 8**

Defendants do not dispute that in March and April 2020, Plaintiff demanded pre-payment of ten percent of the outstanding principal under the LSAs and the Capstone Companies did not make the payments, but dispute the remainder of the Statement as a legal conclusion ultimately to be determined by the Court.

**PLAINTIFF'S STATEMENT NO. 9**

In addition, the Capstone Companies failed to make timely interest payments in August and September 2020, as acknowledged by their counsel. Ex. 10 to the Declaration of Albena Petrakov.

**DEFENDANTS' RESPONSE TO STATEMENT NO. 9**

Disputed and unsupported by the evidence proffered, as the letter from Mr. Siskind referenced merely confirmed the payment plan agreed to by the parties.  Defendants do not dispute that payment of interest for August 2020 and September 2020 was made in February 2021 in accordance with the modification agreement as understood by Defendants and Mr. van Oosterbosch.  Ingrassia Affidavit, ¶ 15; Abady Affidavit, ¶ 7 and Ex. 1; Amended Counterclaims, ¶ 20.

**PLAINTIFF'S STATEMENT NO. 10**

The only payment made by the Capstone Companies since the notices of default was a transfer of $1,000,000 on or about February 28, 2021. Amended Counterclaim, ECF 54, ¶ 19.

**DEFENDANTS' RESPONSE TO STATEMENT NO. 10**

Disputed and not supported by the evidence proffered.  Defendants do not dispute that they wired $1,000,000 on February 26, 2021 to Plaintiff; however, since the June 2020 notices of

default the Capstone Companies have made interest payments totaling $830,163.98 to Stichting (not counting the $1 million wire) and interest payments totaling $3,412,925.46 to CCCLF. Abady Affidavit, ¶ 4.

## PLAINTIFF'S STATEMENT NO. 11

There remains a total of $17,850,000 in outstanding principal owed to Stichting under the Capstone Credit Note, and $21,889,019 in outstanding principal under the Capstone Capital Note. Declaration of Jaap Tick, ¶ 25.

## DEFENDANTS' RESPONSE TO STATEMENT NO. 11

Disputed as whether the amounts quoted are "owed" to Stichting is a legal issue ultimately to be determined by the Court, and disputed as to the amounts quoted.  The outstanding principal under the Capstone Credit Line of Credit Note amounts to $17,765,082.26, and the outstanding principal under the Capstone Capital Line of Credit Note amounts to $21,804,101.27.  Abady Affidavit, ¶ 6.

## DEFENDANTS' COUNTERSTATEMENT OF MATERIAL FACTS

1.      Jack van Oosterbosch ("Van Oosterbosch"), De Veste (or its predecessor in interest), Stichting (or its predecessor in interest), and Defendants have been doing business together since 2009.  Ingrassia Affidavit, ¶ 2; Amended Counterclaims, ¶¶ 1, 8-10.

2.      In 2009 Stichting and a fund managed by De Veste and van Oosterbosch invested in an off-shore fund, CCCLF, and Stichting became a limited partner in CCCLF.  Ingrassia Affidavit, ¶ 2; van Oosterbosch Tr. 30:14-31:12 (Chin Decl. Ex. 2); Amended Counterclaims, ¶ 8.

3.     Van Oosterbosch visited New York City once or twice a year after he made his initial due diligence trip in 2009 to the offices of the Capstone Companies.  Ingrassia Affidavit, ¶ 3; Amended Counterclaims, ¶ 4.

4.     Since 2009, van Oosterbosch has been the principal and often the only means available to Defendants of communicating with Plaintiff, De Veste and their predecessors in interest.  Ingrassia Affidavit, ¶3; van Oosterbosch Declaration, ¶ 15; Amended Counterclaims, ¶ 4.

5.     Several years after this business relationship began, changes in the regulatory framework governing the operations of the funds operated by Stichting, De Veste and van Oosterbosch in the Netherlands required changes in the way Stichting and De Veste invested in CCCLF.  Van Oosterbosch Declaration, ¶¶ 8-11; Ingrassia Affidavit, ¶ 4; Amended Counterclaims ¶¶ 9, 11.

6.     The Dutch regulatory authority for the Financial Markets ("AFM") raised questions about De Veste's operations and ultimately cancelled its license.  van Oosterbosch Tr. 95:20-97:22 (Chin Decl. Ex. 2), Ingrassia Affidavit, ¶ 7; Amended Counterclaims ¶¶ 11, 16.

7.     Van Oosterbosch reached out frequently to Defendants for assistance in responding to the questions raised by AFM, which Defendants provided.  Ingrassia Affidavit, ¶¶ 4, 5, 7, 12; Amended Counterclaims ¶¶ 1, 9, 11.

8.     Defendants made it possible for Stichting, De Veste and van Oosterbosch to continue their investment in CCCLF by agreeing to enter into the LSAs and Intercreditor Agreement.  Ingrassia Affidavit, ¶ 7; van Oosterbosch Declaration, ¶ 12.

-8-

9.      After execution of these documents, the business relationship of the parties that had developed since 2009 did not change substantially:  van Oosterbosch continued to treat CCCLF and Defendants essentially as a partner in investment endeavors.  Ingrassia Affidavit, ¶ 8; Amended Counterclaims, ¶¶ 11, 12.

10.     Among other things, De Veste continued to submit redemption requests far in advance of any payment date and often cancelled them.  Ingrassia Affidavit, ¶ 8; van Oosterbosch Transcript 110:2-111:13 (Chin Decl. Ex. 2).

11.     Van Oosterbosch and Ingrassia discussed the financial situation caused by the pandemic in early 2020, and Ingrassia advised him that the Capstone Companies would not be able to honor redemption requests until conditions improved.  Ingrassia Affidavit, ¶ 9; van Oosterbosch Tr. 103:16-104:1 (Chin Decl. Ex. 2).

12.     After the Capstone Companies were unable to honor the redemption requests for March 2020 and April 2020, the business relationship continued, as Defendants continued their sharing of financial information with Plaintiff, De Veste and van Oosterbosch, continued their discussions about the redemption requests, and continued their compliance with requests made by van Oosterbosch and De Veste for assistance.  Ingrassia Affidavit, ¶ 10; van Oosterbosch Tr. 112:9-113:20 (Chin Decl. Ex. 2).

13.     These discussions resulted, among other things, in agreement to modify the Line of Credit Notes and LSAs: the alleged default would be waived once the Capstone Companies made the interest payments due for August 2020 and September 2020, and thereafter all payments would be applied to principal until the principal balance was fully paid.  Ingrassia Affidavit, ¶ 11; Amended Counterclaims, ¶ 18.

14.     In furtherance of that agreement, the Capstone Companies wired $1 million to Stichting on February 26, 2021.  Defendants were not aware that van Oosterbosch did not have authority to agree to the modification, and would not have wired $1 million to Stichting had they known.  Ingrassia Affidavit, ¶ 14.

15.     Ingrassia emailed the signed documents modifying the Line of Credit Notes and LSAs to van Oosterbosch on Sunday, February 28, 2021, including an updated account statement reflecting the $1 million wire.  Ingrassia simply asked that van Oosterbosch have his administrator sign and return a copy for Defendants' files.  Ingrassia Affidavit, ¶ 14; van Oosterbosch Declaration, Ex. 8; Amended Counterclaims, ¶ 19.

16.     The essential elements of the modification agreement were confirmed by Mr. van Oosterbosch repeatedly.  As final confirmation of the agreement, van Oosterbosch emailed the Chief Financial Officer of the Capstone Companies, Ruth Abady-Soltanovici, requesting that the account statement be revised to match his understanding of the agreement, that is, that Defendants by their $1 million wire had paid the interest for August and September 2020 rather than September and October 2020.  Ingrassia Affidavit, ¶ 15; Abady Affidavit, ¶ 7; Amended Counterclaims, ¶ 20.

17.     Stichting declined to execute the documents modifying the Line of Credit Notes and LSAs, commenced this lawsuit and sent letters to certain of the Capstone Companies' customers advising them of the alleged default and demanding payment of any monies owed to the Capstone Companies.  Ingrassia Affidavit, ¶ 16 and Exhibit 5; Amended Counterclaims, ¶ 21.

Dated: New York, New York
       April 1, 2022

                                   **CROWELL & MORING LLP**


                                   By:   *s/Kathy H. Chin*
                                         Kathy H. Chin
                                         Andrea Charles

                                   590 Madison Avenue, 20th Floor
                                   New York, New York 10022
                                   Telephone: (212) 223-4000
                                   Facsimile: (212) 223-4134
                                   khchin@crowell.com
                                   acharles@crowell.com

                                   *Attorneys for Defendants Capstone Credit,*
                                   *LLC, Capstone Capital Group, LLC and*
                                   *Joseph F. Ingrassia*