UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

STICHTING JURIDISCH EIGENDOM DE    :
VESTE BELEGGINGSFONDSEN,    :
              Plaintiff,    :
    :         21 Civ. 2102 (LGS)
   -against-    :
    :        **<u>OPINION AND ORDER</u>**
CAPSTONE CREDIT, LLC, ET AL.,    :
             Defendants.    :

------------------------------------------------------------ X

CAPSTONE CREDIT, LLC, ET AL.,    :
        Counterclaim-Plaintiffs,    :
    :
   -against-    :
    :
STICHTING JURIDISCH EIGENDOM DE    :
VESTE BELEGGINGSFONDSEN, ET AL.,    :
        Counterclaim-Defendants.  :

------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Stichting Juridisch Eigendom De Veste Beleggingsfondsen ("Stichting") brings

this action for breach of contract and foreclosure against Defendants Capstone Credit, LLC

("CC") and Capstone Capital Group, LLC ("CCG") and for fraudulent misrepresentation against

their Managing Member, Joseph F. Ingrassia.  Defendants bring counterclaims for breach of the

implied covenant of good faith and fair dealing and tortious interference against Stichting, and

fraudulent misrepresentation against Stichting, Stichting's asset manager, De Veste B.V. ("De

Veste"), and De Veste CEO Jack van Oosterbosch (collectively, the "Counterclaim

Defendants"). Stichting moves for summary judgment on Counts 1 and 3 of the Complaint, for

breach of contract and foreclosure against CC and CCG.  The Counterclaim Defendants move to

dismiss the counterclaims.  For the reasons below, Stichting's motion for partial summary

judgment, and the Counterclaim Defendants' motion to dismiss the counterclaims, are granted.

I.      **BACKGROUND**

A.      **Facts Relevant to Plaintiff's Motion for Summary Judgment**

The following facts are drawn from the parties' Rule 56.1 statements and other

submissions on these motions.  The facts are undisputed or based on evidence in the record

drawing all reasonable inferences in favor of the non-moving party.  *See N.Y. State Teamsters*

*Conf. Pension & Ret. Fund v. C & S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022).

1.      **The Parties' Relationship**

CC and CCG are Delaware companies that offer factoring and purchase order financing

for companies.  Capstone Cayman Current Liquidity Fund ("CCCLF" and, collectively with CC

and CCG, "Capstone") is a Cayman Islands limited partnership formed primarily to make senior

subordinated loans to CC and CCG.  Joseph Ingrassia is the managing member of CC and CCG.

Stichting is a foundation duly organized under the laws of the Netherlands.  Stichting is

the legal owner of the assets of a pooled investment vehicle managed by De Veste.  Jack van

Oosterbosch is and has been at all relevant times the CEO of De Veste and manager of its funds.

On or about November 1, 2009, De Veste invested as a limited partner in CCCLF.  Since

initiating the relationship in 2009, van Oosterbosch has been the main point of contact between

De Veste on the one hand, and CC, CCG and Ingrassia on the other.  De Veste initially managed

funds only for professional investors but later also came to manage funds for retail investors.

In the mid-2010s, the Netherlands Authority for the Financial Markets ("AFM"), a

regulator analogous to the U.S. SEC, told De Veste that it could not manage funds for retail and

professional investors in the same vehicle.  Van Oosterbosch sought Capstone's help in

restructuring the investment, and Capstone agreed.  To preserve its investment in Capstone, De

Veste split in two.  The professional funds came to be owned and managed by new entities,

while the retail fund continued to be owned by Stichting and managed by De Veste.  In place of

the prior partnership interest in CCCLF, Stichting extended lines of credit directly to CC and

CCG.  CC and CCG each issued a Line of Credit Note (the "Notes") to Stichting, each entered

into a Loan and Security Agreement ("LSA") with Stichting, and Stichting entered an

Intercreditor Agreement ("ICA") with the general partner of CCCLF, all dated September 25,

2017.  Ingrassia signed these documents on behalf of Capstone.  Representatives of Stichting's

then-director signed on behalf of Stichting.  Although De Veste was not a party, van

Ooosterbosch signed on behalf of De Veste as "read and agreed to."

The Notes, LSAs and ICA are the only signed documents between Stichting and

Capstone.  The documents contain provisions requiring any amendment or modification to be in

a writing signed by Stichting.  Each Note provides for up to $45,000,000 in principal, 12.5%

interest, default interest 2% higher than the rate charged and maturity on September 30, 2022.

Each Note also gives Stichting the "right to Call a pre-payment of this Note without penalty or

premium with interest to the date of prepayment" up to "a maximum of ten percent (10%) of the

unpaid principal balance."  Under the Notes, failure to pay any amount due timely constitutes an

Event of Default.  "To secure the payment and performance in full of the Obligations" including

under the Notes, each LSA granted Stichting "a first priority continuing general lien and security

interest in all of the now owned and hereafter acquired Collateral, and all proceeds and product

thereof," including "all Collateral which is presently in existence or hereafter acquired and

which is owned by Borrower or in which Borrower has any interest, whether held by Borrower

or by others for Borrower's account, and wherever located."  Collateral includes "[a]ll

Borrower's present and future Accounts, Chattel Paper, Goods, Inventory, Equipment,

Instruments, Investment Property, Documents, and General Intangibles." Stichting's liens are "subject to the" ICA, which makes Stichting's and CCLF's liens "of equal priority."

This restructuring allowed De Veste and Stichting to maintain the substance of their prior investment in Capstone. The restructuring was not motivated by CC or CCG's need for a loan, but by De Veste and Stichting's desire to stay invested in Capstone while avoiding further regulatory inquiries. The restructuring did not substantially change the parties' ongoing interactions. For example, before and after the restructuring, De Veste often submitted "redemption" requests far in advance of any payment date and then cancelled them. Capstone continued to treat Stichting and De Veste as they had before as partners, and vice versa, including through investor updates, weekly calls and reports, access to a data room, and frequent correspondence about Capstone's business and financial position.

### 2. The Current Dispute

In early 2020, Ingrassia and van Oosterbosch discussed the devastating effect that the pandemic had on Capstone. Ingrassia told van Oosterbosch that Capstone would be unable to honor "redemption" requests until conditions improved. In March 2020 and again in April, Stichting demanded pre-payment of 10% of the outstanding principal on each Note: $1,300,000 in March and $1,400,000 in April. CC and CCG did not make the payments. In June 2020, Stichting sent default notices and accelerated payment of the full principal on each Note. CC and CCG also did not timely make the interest payments due in August and September 2020. After Stichting declared CC and CCG to be in default, the parties continued business as usual. The parties also continued discussing ways to resolve the issue of the unpaid "redemptions," such as refinancing.

In November 2020, van Oosterbosch, on behalf of De Veste, sent a "final notice" to Capstone stating the amounts purportedly owed and demanding that Capstone take several actions to avoid litigation.  De Veste demanded (1) a payment of at least $4,000,000, (2) a schedule on which Capstone would repay both loans in full, with interest, within six months, and (3) a valuation of Capstone's portfolio conducted by an independent auditor.  Capstone complied with the valuation demand.

On December 3, 2020, Ingrassia and van Oosterbosch discussed amending the Notes such that Capstone would pay interest through October 1, 2020, and payments would be applied to principal thereafter until paid in full.  On December 7, 2020, Ingrassia told van Oosterbosch that Capstone's counsel would document the modification.  On January 13, 2021, in response to pressure from AFM, van Oosterbosch wrote to Ingrassia to inquire about any other defaults that Capstone was facing and requesting a "side letter" in favor of De Veste.  In response, Ingrassia told van Oosterbosch that they could not enter a side letter "because the Note and Security Agreement that we signed to assist you when you were facing regulatory issues in The Netherlands was specifically limited by the Intercreditor Agreement with the Cayman Fund." Ingrassia told van Oosterbosch that, when Capstone was prepared to make the August and September interest payments, it would present a modification agreement that would memorialize their verbal agreement.  Throughout the negotiations, van Oosterbosch represented that, when Capstone made the August and September 2020 interest payments, De Veste and Stichting would execute loan modification documents.  At all times, Capstone believed van Oosterbosch, as the point of contact for De Veste, had authority to negotiate a modification of the loan.

On February 9, 2021, counsel for Stichting sent a "Notice of Continued Default" that "reiterate[d] Stichting's demand for payment in full of all indebtedness under the LSAs within

5

two weeks." On February 16, 2021, Capstone's counsel responded by advising Stichting's counsel of the parties' payment plan and modification. On February 26, 2021, Capstone wired $1,000,000 to Stichting for August and September 2020 interest. Capstone's CFO sent a statement erroneously stating that interest was paid for September and October 2020. On February 28, 2021, Ingrassia sent van Oosterbosch the loan modification documents and another statement reflecting erroneously labeled interest payments. The updated statement also included updated principal amounts after applying the excess over the interest from the $1,000,000 payment to principal. On March 1, 2021, van Oosterbosch emailed Capstone's CFO asking to correct the months to August and September 2020, but stating that the amounts were correct.

Stichting did not execute the modification agreements. On March 3, 2021, Stichting's counsel sent another letter to Capstone. The letter reiterated that the Notes, LSAs and ICA were the governing agreements. The letter also stated that they had no record of another agreement in writing as required by the no-oral-modification clauses of the agreements. The letter rejected the modification agreements and stated that Stichting had not waived any defaults and reserved all rights. The letter noted that Capstone had failed to pay interest since August 2020 and stated that while the $1,000,000 payment reduced Capstone's debt, it did not cure the existing defaults. Stichting's counsel also referenced several other purported issues with Capstone's compliance with the agreements. Capstone's counsel responded on March 11, 2021.

### B.    Facts Relevant to Counterclaim Defendants' Motion to Dismiss

The following facts are taken from the Amended Counterclaims (the "Counterclaims") and are assumed to be true for purposes of this motion. *See Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021). The following does not repeat facts recounted above.

While the Notes contain pre-payment provisions, the parties' working relationship and history make clear that those provisions were never intended to be used in a deceptive and malicious manner.  The spirit of the September 25, 2017, agreements was not to extend a loan but to continue the parties' prior relationship.  The investment was restructured due to regulatory pressure after Stichting and De Veste violated laws regulating retail investments.  Van Oosterbosch often called for "redemptions" and withdrew them, and the parties typically discussed such requests both before and after they were made.  Prior to the "redemption" requests in March and April 2020, the parties had discussed how much Capstone would be able to redeem based on its cash position, which had been harmed by the pandemic.  The redemption request was apparently motivated by Stichting and De Veste's desire to create leverage to negotiate a new deal with Capstone and to get as much money up-front as possible in order to address ongoing regulatory challenges.

Ingrassia and van Oosterbosch spent several months discussing potential modifications to the notes, which would reduce Defendants' interest obligations in exchange for partial payment. Van Oosterbosch told Ingrassia that, after the partial payment was received, Stichting would execute modifications of the Notes and LSAs, which the parties had fully agreed to.  Capstone wired $1,000,000 -- more than the negotiated amount of interest to be paid -- and also sent written modification agreements.  Stichting confirmed that the amounts wired were correct but refused to sign the agreements.

Since initiating this lawsuit, Stichting has reached out to certain of Defendants' customers to advise them of the default and directed them to pay Stichting directly rather than Capstone.  Many of Defendants' customers have ceased doing business with them, and no new investors have subscribed since the suit was filed.

## II.    STANDARD

### A.    Summary Judgment Standard

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk Cty.*, 17 F.4th 342, 354 (2d Cir. 2021).  When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing to particular parts of materials in the record.  *See* Fed. R. Civ. P. 56(c)(1)(A).  "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory."  *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021).

### B.    Motion to Dismiss Standard

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations."  *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).  To withstand a

motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a complaint to allege facts that are consistent with liability; it must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

## III.   DISCUSSION[1]

### A.   Plaintiff's Breach of Contract Claims

Stichting moves for summary judgment on Count One, its breach of contract claim alleging that CC and CCG breached their obligations under the Notes and LSAs by failing to make required payments. Stichting has presented undisputed evidence of its right to payment. Defendants oppose summary judgment asserting issues of fact about the meaning of the parties' agreements; whether they were modified; and whether any of Defendants' counterclaims have merit and preclude Stichting's recovery for breach of contract. Each of these arguments is unavailing. As discussed below, the parties' agreement is unambiguous, and Defendants have

---

[1] The parties agree that New York law governs this dispute, pursuant to the terms of the contract and applicable choice-of-law principles. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law[.]").

not offered evidence that raises a triable issue of fact about any purported modification of the agreements or any of Defendants' counterclaims. Therefore, Stichting's motion for summary judgment on its contract claim is granted.

### 1. The Notes are Prima Facie Enforceable

"The elements of a breach of contract claim are (1) the existence of a contract, (2) the plaintiff's performance, (3) the defendant's breach, and (4) resulting damages." *Alloy Advisory, LLC v. 503 W. 33rd Assocs., Inc.*, 144 N.Y.S.3d 854, 854 (1st Dep't 2021). "To establish prima facie entitlement to judgment as a matter of law with respect to a promissory note, a plaintiff must show the existence of a promissory note, executed by the defendant containing an unequivocal and unconditional obligation to repay, and the failure [by] the defendant to pay in accordance with the note's terms." *Pasechnik v. Shporin*, 133 N.Y.S.3d 858, 858-59 (2d Dep't 2020); *accord Int'l Fin. Grp., Inc. v. Hambrecht*, 162 N.Y.S.3d 725, 725 (1st Dep't 2022).

The existence of the Notes and LSAs executed by CC and CCG are undisputed. They unambiguously grant Stichting the right to call for pre-payment of the principal subject to certain terms. It is undisputed that Stichting exercised that right and that Defendants did not timely make the required payments. Stichting has established prima facie entitlement to summary judgment on Count One.

### 2. Contract Ambiguity

Defendants argue that the Notes, LSAs and the ICA are ambiguous in two ways, precluding summary judgment on the breach of contract claim. Defendants first argue that there is ambiguity in the LSAs' grant of a "first priority continuing general lien and security interest" that is "*subject to* the Intercreditor Agreement." Defendants suggest an ambiguity about the priority of liens, but this argument is a non sequitur. The issue in Count One is whether CC and

10

CCG have made contractually required payments on their debt, and does not concern the collateral securing the debt.  Defendants also argue that the parties' imprecise use of the word "redemption" rather than "prepayment" in correspondence reveals an ambiguity, because "redemptions" are more closely associated with the kind of investment relationship that existed before the investment was restructured into a line of credit, while "prepayments" are more typical of loans.  That argument is unpersuasive because the word "redemption" does not appear in the Notes or LSAs.  The relevant language in the prepayment provisions is unambiguous, and Defendants do not suggest otherwise.

### 3.  Purported Oral Modification

Defendants argue that the parties made an enforceable, oral agreement to modify the Notes and LSAs, and that they are not in breach of the agreement as modified.  This argument is unsuccessful because, under the terms of the parties' agreements, any oral modification is unenforceable.  The Notes and LSAs each contain a no-oral-modification clause.  Under New York law, a written agreement that proscribes oral modification can by changed only by a signed written agreement.  *See* N.Y. Gen. Obligations Law § 15-301.  Defendants argue that the oral modification is enforceable despite their contractual agreement to the contrary under two exceptions to § 15-301 -- partial performance and equitable estoppel.  Neither exception applies here because the performance on which Defendants rely -- the $1,000,000 payment in February 2021 -- was already due under the Notes.

Both exceptions invoked by Defendants are recognized under New York law.  "Partial performance of an oral agreement to modify a written contract, if unequivocally referable to the modification, avoids the [§ 15-301] statutory requirement of a writing."  *Rose v. Spa Realty Assocs.*, 366 N.E.2d 1279, 1281 (N.Y. 1977).  Similarly, "when a party's conduct induces

another's significant and substantial reliance on the agreement to modify, albeit oral, that party may be estopped from disputing the modification notwithstanding the statute." *Id.*; *accord Signature Fin. LLC v. Garber*, 159 N.Y.S.3d 38, 39-40 (1st Dep't 2021); *Premier Med. Sys., LLC v. NeuroLogica Corp.*, No. 21 Civ. 1337, 2022 WL 603999, at \*9-10 (S.D.N.Y. Feb. 28, 2022).

Each exception includes a similar limitation.  The partial performance exception applies "only if the partial performance be unequivocally referable to the oral modification." *Rose*, 366 N.E.2d at 1283.  "Unequivocally referable" means that the performance is "unintelligible or at least extraordinary, explainable only with reference to the oral agreement." *Anostario v. Vicinanzo*, 450 N.E.2d 215, 216 (N.Y. 1983) (internal quotation marks omitted); *accord Gootee v. Global Credit Servs., LLC*, 32 N.Y.S.3d 105, 112 (1st Dep't 2016).  Similarly, "conduct relied upon to establish estoppel must not otherwise be compatible with the agreement as written." *Rose*, 366 N.E.2d at 1283.

Defendants argue that they partially performed by paying \$1,000,000 for August and September 2020 interest (plus some excess) to Stichting in February 2021, and that Stichting is estopped because Defendants made that payment in reliance on the oral modification.  But the parties' agreements show that the payment was already required and therefore cannot establish partial performance or equitable estoppel.  Interest was due for August and September 2020 under the original Notes.  The excess payment that made up the remainder of the \$1,000,000 was far less than the amounts of the unpaid prepayments that Stichting had called in March and April 2020, and presumably less than the interest amounts for October 2020 through February 2021.

The orally modified contract allegedly required immediate payment only of August and September 2020 interest, and van Oosterbosch allegedly acknowledged that the payment was for

those months.  But "[i]t is not sufficient . . . that the oral agreement gives significance to" the performance.  *Anostario*, 450 N.E.2d at 216 ("While the agreement alleged provides a possible motivation for plaintiff's actions, the performance is equivocal, for it is as reasonably explained by the possibility of other expectations"); *Bank of Smithtown v. 264 W. 124 LLC*, 963 N.Y.S.2d 176, 178 (1st Dep't 2013) (granting summary judgment because "[p]ayment of the common charge arrears was 'reasonably explained' by their legal obligation to make those payments" (quoting *Anostario*, 450 N.E.2d at 216)).  Paying only part of one's debt is "just as demonstrative of breach of contract as of completion of the purported oral modification."  *Eujoy Realty Corp. v. Van Wagner Comm'ns, LLC*, 4 N.E.3d 336, 345 (N.Y. 2013) (affirming summary judgment).  Section 15-301 "becomes meaningless if . . . nonpayment [of a portion] is sufficient to prove an oral modification of payment terms, or estop the [obligee] from recovering the shortfall."  *Id.*

Defendants also argue that their preparation of modification agreements and exchange of communications with Stichting about the modification constitute partial performance sufficient to trigger the exception.  Even if those actions could be considered "performance," they are not unequivocally referable because such performance "is also explainable as preparatory steps taken with a view toward consummation of an agreement in the future."  *Nassau Beekman, LLC v. Ann/Nassau Realty, LLC*, 960 N.Y.S.2d 70, 74 (1st Dep't 2013) (internal quotation marks omitted) (quoting *Anostario*, 450 N.E.2d at 216) (affirming summary judgment).  And that consummation never occurred.

Because Defendants have not provided evidence of any act or performance incompatible with their obligations under the Notes and LSAs, neither the partial performance nor equitable estoppel exception applies to waive the contractual no-oral-modification requirement.  Any oral agreement to modify the Notes and LSAs is unenforceable.

**B.     Defendants' Counterclaims**

Defendants' counterclaims -- for breach of the implied covenant of good faith and fair dealing, tortious interference with business relations and fraudulent misrepresentation -- are the subject of both motions addressed in this opinion.  First, Counterclaim Defendants move to dismiss each of the counterclaims for failure to state a claim.  That motion is granted.  Second, on Stichting's motion for summary judgment, Defendants argue that the counterclaims raise triable issues that preclude summary judgment on Stichting's contract claim.  That argument is rejected because, to the extent the counterclaims are relevant to Stichting's claims, the record evidence does not support them.

**1.   Breach of the Implied Covenant of Good Faith and Fair Dealing**

Defendants' First Counterclaim for breach of the implied covenant of good faith and fair dealing invokes the implied pledge "that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002) (internal quotation marks omitted); *accord Parlux Fragrances, LLC v. S. Carter Enters., LLC*, 164 N.Y.S.3d 108, 123 (1st Dep't 2022).  For purposes of Stichting's motion for summary judgment, this claim and evidence supporting it are construed as disputing the second element Stichting must prove to prevail on its contract claim, that Stichting performed as required under the contract.  *See Parlux*, 164 N.Y.S.3d at 123.

Defendants argue first that Stichting breached the implied covenant by turning the Notes, which were meant to help Stichting, into a "weapon against Defendants."  This argument fails as a matter of law because "the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship."  *511 W. 232nd Owners Corp.*, 773

N.E.2d at 500 (internal quotation marks omitted); *accord Gottwald v. Sebert*, 148 N.Y.S.3d 37, 47 (1st Dep't 2021).  Defendants assert that the purpose of the Notes was to maintain the substance of Stichting's prior investment in Capstone while complying with AFM requirements. On that basis, Defendants argue that Stichting did not have the right to exercise its prepayment or "redemption" rights granted by the undisputed terms of the Notes.  Even drawing all inferences in Defendants' favor, the parties' purported motive or purpose cannot give rise to an implied covenant that is inconsistent with the contract's express terms.

Defendants also argue that Stichting's refusal to honor the modification of the Notes breached the implied covenant.  This argument is incorrect because, as discussed above, there was no enforceable modification.  Nor can Stichting's alleged refusal to sign the modification after agreeing to it orally breach the implied covenant, "because there is no enforceable contract."  *Castelloti v. Free*, 27 N.Y.S.3d 507, 518 (1st Dep't 2016); *accord Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017).

For similar reasons, Counterclaim Defendants' motion to dismiss the breach of implied covenant counterclaim is granted.  The Counterclaims incorporate by reference the unambiguous terms of the contract permitting Stichting to take the action it did, and the implied covenant cannot impose inconsistent duties.  The Counterclaims also do not allege an enforceable oral modification, as discussed above, so they cannot allege that different implied duties arose from the contract as modified.

### 2.  Tortious Interference

Defendants' Second Counterclaim for tortious interference alleges that Stichting advised Defendants' most important customers of Defendants' alleged default and demanded that those customers pay Stichting instead of Defendants.  These facts are not pertinent to Stichting's

summary judgment motion because they do not raise any issue about any of the elements of Stichting's contract claim, nor do they state an affirmative defense to breach of contract. Accordingly, the tortious interference counterclaim is analyzed only for the purpose of Counterclaim Defendants' motion to dismiss.  That motion is granted because the counterclaim is not sufficiently alleged.  The Counterclaims do not specify whether this claim is for tortious interference with contract or with prospective economic relations, but it is not adequately alleged under either theory.  *See Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004) ("We have recognized that inducing breach of a binding agreement and interfering with a nonbinding economic relation can both be torts, but that the elements of the two torts are not the same." (internal quotation marks omitted)).

### a.  Tortious Interference with Contract

The Counterclaims allege interference with existing customers with "valid agreements" with Defendants, so this may be construed as a claim for tortious interference with contract. Under New York law, a claim of tortious interference with contract requires "[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126-27 (2d Cir. 2019) (applying New York law); *accord Sutton 58 Assocs. LLC v. Pilevsky*, 164 N.E.3d 984, 995 (N.Y. 2020).

The counterclaim for tortious interference with contract is dismissed because it does not allege the fourth element, that Defendants' customers actually breached their contracts.  The Counterclaims allege that the contracts, of which Stichting was aware, directed that payments be made to Defendants.  The Counterclaims further allege that Stichting demanded that, contrary to

the contracts, the customers pay Stichting instead of Defendants.  But the Counterclaims do not allege that the customers breached the contracts by acceding to Stichting's demands.  To the contrary, the Counterclaims suggest that there was no breach; they allege only that "[t]he majority of these customers thereafter elected not to continue doing business with Defendants."[2]

### b.  Tortious Interference with Business Relations

Because the Counterclaims allege that customers prospectively stopped doing business with Defendants, this claim may also be construed as one for tortious interference with business relations.  To state a claim, Defendants "must allege that (1) [they] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship."  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (applying New York law) (internal quotation marks omitted); *accord Tera Grp., Inc. v. Citigroup, Inc.*, No. 17 Civ. 4302, 2019 WL 3457242, at *22 (S.D.N.Y. July 30, 2019) (applying New York law); *Amaranth LLC v. J.P. Morgan Chase & Co.*, 888 N.Y.S.2d 489, 494 (1st Dep't 2009).  Such claims are subject to a "more culpable conduct standard," which requires that interference "was accomplished by wrongful means or where the offending party acted for the sole purpose of harming the other party."  *106 N. Broadway, LLC v. Lawrence*, 137 N.Y.S.3d 148, 157 (2d Dep't 2020) (internal quotation marks and citation omitted).  "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits

---

[2] Because of this deficiency, this opinion does not address whether the tortious interference counterclaim adequately pleads facts showing that Stichting acted "without justification" as required by the third element of the claim.  It seems unlikely that such facts could be pleaded in light of the terms of the parties' agreements, which can be considered on a motion to dismiss because they are expressly referenced in the Counterclaims.  *See U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

and criminal prosecutions, and some degrees of economic pressure." *Id.* (quoting *Guard-Life Corp. v. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 449 (N.Y. 1980)). "'The implication is that, as a general rule, the defendant's conduct must amount to a crime or an independent tort." *Id.* (internal quotation marks omitted). "This tort is a difficult one to sustain, with requirements more demanding than those for interference with . . . an existing contract." *Tera Grp.*, 2019 WL 3457242, at *22 (internal quotation marks omitted).

The counterclaim for tortious interference with business relations is dismissed because Defendants do not allege the third element -- that Stichting's conduct was "criminal or independently tortious" or undertaken "for the sole purpose of inflicting intentional harm on" Defendants when it directed their customers to divert payments. *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004) (internal quotation marks omitted); *accord Wolberg v. IAI N. Am., Inc.*, 77 N.Y.S.3d 348, 351 (1st Dep't 2018). As discussed below, the Notes and LSAs expressly referenced in the Counterclaims show that Stichting attempted to collect collateral to which it was entitled under the LSAs, i.e., Defendants' receivables. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (noting that allegations in pleadings are "assume[d] to be true unless contradicted by more specific allegations or documentary evidence" that is part of the pleading because it is attached, incorporated by reference, or integral thereto); *accord Leroy v. Delta Air Lines*, No. 21-267-cv, 2022 WL 12144507, at *1 n.3 (2d Cir. Oct. 27, 2022) (summary order). Because Stichting was, at least in part, acting out of "economic self-interest," any argument or allegation that they acted solely to harm Defendants fails a matter of law. *Carvel*, 818 N.E.2d at 1103; *Wolberg*, 77 N.Y.S.3d at 351.

### 3. Fraudulent Misrepresentation

Defendants' Third Counterclaim for fraudulent misrepresentation is dismissed for failure to state a claim.  To plead a cause of action for fraudulent misrepresentation under New York law, Defendants must allege "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages flowing therefrom." *Norddeutsche Landesbank Girozentrale v. Tilton*, 48 N.Y.S.3d 98, 105 (1st Dep't 2017) (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976 (N.Y. 2009)).  "To fulfill the element of misrepresentation of material fact, the party advancing the claim must allege a misrepresentation of present fact rather than of future intent."  *Perella Weinberg Partners LLC v. Kramer*, 58 N.Y.S.3d 384, 390 (1st Dep't 2017) (citing *Deerfield Comm'ns Corp. v. Chesebrough-Ponds, Inc.*, 502 N.E.2d 1003 (N.Y. 1986)).  "General allegations of lack of intent to perform are insufficient; rather, facts must be alleged establishing that the adverse party, at the time of making the promissory representation, never intended to honor the promise."  *Id.*

The Counterclaims allege that the Counterclaim Defendants "misrepresented that Plaintiff would waive the Event of Default and enter in the Modification, and that any payments over the outstanding interest amount would be applied to the principal of the notes once [CCG] and [CC] made [two] outstanding interest payments."  That allegation pertains solely to Counterclaim Defendants' future intent, and does not allege facts that van Oosterbosch lacked a present intent to sign the modification when he said he would.  As the allegation is insufficient, the fraudulent misrepresentation counterclaim is dismissed.  To the extent the counterclaim may be construed as a defense to breach of contract, there is no record evidence from which a reasonable jury could conclude that van Oosterbosch had the requisite knowledge or intent.

### C.        Plaintiff's Foreclosure Claim

Stichting's motion for summary judgment on its foreclosure claim is granted.  Under the New York UCC, "[a]fter a default, a secured party . . . may reduce a claim to judgment, foreclose, or otherwise enforce the claim [or] security interest . . . by any available judicial procedure."  N.Y. U.C.C. § 9-601.  To establish entitlement to judgment as a matter of law "in an action to foreclose a security agreement, the movant must submit proof of the existence of the loans, notes, and security agreement, and proof of default."  *Gera v. All-Pro Athletics, Inc.*, 870 N.Y.S.2d 87, 88 (2d Dep't 2008) (citing *First City Nat'l Bank & Tr. Co. v. Heaton*, 563 N.Y.S.2d 783, 784 (1st Dep't 1990)).  If Stichting carries that burden on its prima facie case, "it [is] incumbent on defendants to present evidentiary facts raising a triable issue of fact with respect to a *bona fide* defense."  *Heaton*, 563 N.Y.S.2d at 784.

Stichting has established its prima facie entitlement to judgment.  Stichting produced the Notes and the LSAs, which were not subject to any oral modification as discussed above.  The parties do not dispute that Defendants failed to pay.  And the failure to pay constitutes an "Event of Default" under the Notes.  Defendants nevertheless argue that summary judgment is inappropriate because the LSAs and the ICA are ambiguous about the treatment of collateral, and because there are meritorious defenses to the equitable remedy of foreclosure.  Neither argument is persuasive.

First, there is no ambiguity about the treatment of collateral under the LSAs and the ICA. Defendants argue that an ambiguity about the priority of liens arises from the LSAs' grant to Stichting of a "first priority continuing general lien and security interest" that is "*subject to* the Intercreditor Agreement."  This language, Defendants assert, is difficult to reconcile with the ICA's provision that Plaintiff's and CCCLF's liens "shall be of equal priority."  In context, those

provisions are unambiguous.  The only reasonable reading of the LSAs and the ICA together is that Plaintiff's lien is senior to every lien other than CCCLF's, and Plaintiff and CCCLF share collateral pro rata.  Undisputed record evidence shows that both parties understood the agreements to function in that way.

Defendant cites two cases finding the phrase "subject to" ambiguous.  *See Yonkers Racing Corp. v. Catskill Regional Off-Track Betting Corp.*, 552 N.Y.S.2d 670, 675 (2d Dep't 1990); *S.E.C. v. Rosenthal*, 650 F.3d 156, 159-60 (2d Cir. 2011).  Both cases are distinguishable because they involved different agreements where the ambiguity lay in the words following "subject to."  Here, there is no question that the ICA is referenced.

Defendants also have not raised a triable issue as to whether any equitable defense to foreclosure applies on this record.  Defendants raise the doctrines of unclean hands and equitable estoppel as defenses to foreclosure, based on the same purportedly inequitable conduct that is the subject of the Counterclaims.  Those arguments are rejected for the same reasons that the Court finds Defendants have not raised a triable issue of fact about an enforceable oral modification or sufficiently alleged any of their counterclaims.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment on Count One (breach of contract) and Count Three (foreclosure) is granted.  Counterclaim-Defendants' motion to dismiss the Counterclaims is granted.  By **January 20, 2022**, Plaintiff shall file a letter proposing next steps and stating its intention with respect to the Second Cause of Action for fraudulent misrepresentation, which is not the subject of the instant motions.

Should Defendants seek to replead the dismissed counterclaims, they shall file by **January 13, 2022**, a red-lined version of the proposed second amended counterclaims, showing

changes from the first Amended Counterclaims, together with a letter application, not to exceed

three pages, explaining how the proposed amendment cures the deficiencies identified above.

The Clerk of Court is respectfully directed to close the motion at Docket Number 80.

Dated: December 30, 2022
     New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**